547 S.E.2d 251

**STATE of West Virginia, ex rel. DENISE L.B., Petitioner,**

v.

**Honorable Robert A. BURNSIDE, Judge, of the Circuit Court of Raleigh County; H. Suzanne McGraw, Family Law Master for the 13th Family Court Circuit; Mark B., by and through Martha Jane B., as Conservator/Guardian and next friend of Mark B., a protected person; and Sherry Alison L., Respondents.**

No. 29105.

Supreme Court of Appeals of West Virginia.

Submitted April 4, 2001.

Decided April 26, 2001.

---

314

Norris Kantor, Esq., David B. Kelley, Esq., Katz, Kantor & Perkins, Bluefield, West Virginia, Attorneys for Petitioner.

Mark W. Kelley, Esq., Ray, Winton & Kelley, PLLC, Charleston, West Virginia, Attorney for Respondent Martha Jane B.

Tammy Mitchell Bittorf, Esq., Layva, Bittorf & Santa Barbara, PLLC, Martinsburg, West Virginia, Attorney for Respondent Sherry L.

Winifred L. Bucy, Beckley, West Virginia, Guardian *ad litem.*

PER CURIAM:

In the instant case we are asked to examine a February 2, 2001 order of the Circuit Court of Raleigh County. In that order, the circuit court allowed a third party to intervene in a divorce action, and then entered an *ex parte* temporary order giving custody of the parties' two children to the third party. The mother of the children has now petitioned this Court to halt the enforcement of the circuit court's order.

After carefully examining the arguments presented by the parties, and the particular facts in the record, we find that the third party failed to establish standing to intervene in the underlying divorce action. Accordingly, as set forth below, we grant a writ of prohibition.

I.

The petitioner, Denise L.B., and Mark B. were married in 1990, and for most of their married life resided in Beckley, West Virginia, where Mark maintained a dental practice. They are the parents of two children, Christopher (age 7) and Marie Katherine (age 5).

In July 1999, Mark sustained a severe head injury, and for a time after the injury was in a coma. He later regained consciousness, and has undergone substantial rehabilitation. Mark continues to have significant cognitive and physical limitations, and currently resides in Martinsburg, West Virginia with his mother and guardian/conservator, respondent Martha B.

Shortly after Mark was injured, in August 1999, Denise moved to Morgantown, West Virginia where her mother resides. On March 23, 2000, Denise filed a complaint for divorce in the Circuit Court of Raleigh County, West Virginia.

During the course of the divorce proceedings, a guardian *ad litem* was appointed to represent the interests of the parties' two children. After conducting an investigation, the guardian *ad litem* alleged that Denise had prevented the children from visiting their father Mark since his July 1999 injury. Furthermore, the guardian *ad litem* alleged that Denise had told the children that their father was dead, and had also instructed teachers and counselors for the children that they were similarly to tell the children their father was dead.

On February 2, 2001, the family law master overseeing the divorce proceedings in Beckley conducted by telephone what was apparently intended to be a routine status conference. Instead, at that telephone conference, a third party appeared by telephone and presented to the family law master an emergency motion to intervene in the divorce action and a motion to take custody of the two children.

The third party is respondent Sherry L., the sister of Mark, who resides in Martinsburg, West Virginia. Appearing with her attorney by telephone, Sherry L. sought to intervene in the divorce action between Denise and Mark. Although the children were residing with their maternal grandmother in Morgantown, Sherry L. also sought an emergency *ex parte* order pursuant to *W.Va.Code,* 48–2–13(e) from the family law master giving her custody of the two children. The attorneys for both Denise and for Mark's conservator/guardian indicated that they were surprised by the motions. The attorney for Denise objected; the attorney for Mark's conservator/guardian stated that while he had not had a chance to consult with his client, he believed that his client would be amenable to Sherry L. taking custody of the children.

With the exception of a handful of brief questions asked of Sherry L., no witnesses or exhibits were offered at the telephonic hearing. Moreover, no evidence or argument was presented regarding Sherry L.'s standing to intervene. Instead, evidence was proffered, by the attorneys and the guardian *ad litem,* primarily on the question of custody.

At the hearing, the guardian *ad litem* for the children expressed that she had reservations regarding the children continuing to remain in Denise's custody.[1] She stated that Denise was currently employed and living in Virginia, that the children were left with their grandmother in Morgantown, and that Denise would occasionally visit the children on weekends. She believed that Denise's and Mark's families had become "polarized" in a way that was psychologically harmful to the children. She recommended that it would be in the best interests of the children that they receive psychological services to prepare them for the knowledge that their father was still living.

The guardian *ad litem* also indicated to the family law master that she was of the belief that Denise might remove the children from West Virginia-apparently in an attempt to defeat West Virginia's jurisdiction over the issue of the custody of the children. Accordingly, she recommended that the children be immediately transferred from Morgantown to the custody of Sherry L. in Martinsburg.[2]

On February 2, 2001, the family law master forwarded a recommended order to the circuit court recommending that Sherry L.'s petition to intervene be granted. In the order, the family law master also found that the two children were not in the care of either natural parent, but rather in the custody of their maternal grandmother. The family law master further found that Denise, who had been living and working in Virginia, had been visiting the children "almost every weekend." The family law master found Sherry L. to be a fit and proper person to have custody of the two children. She therefore recommended that temporary custody of the children be granted to Sherry L., that Denise be given visitation rights to the children, and that Mark be denied visitation until the children had received independent psychological counseling. Lastly, the family law master recommended that a full evidentiary hearing on the custody of the children be held within 20 days.

The circuit court entered an order adopting the family law master's recommendations that same day.[3]

Denise then filed the instant petition for a writ of mandamus or writ of prohibition, to Circuit Court of Spotsylvania County, Virginia, seeking an emergency order from the Virginia court giving her custody of the parties' two children. The petition was apparently filed pursuant to the Virginia Uniform Child Custody Jurisdiction Act.

In the petition, Denise contended that the West Virginia circuit court, in its February 2, 2001 order, had failed to make a finding of an "immediate and irreparable injury as required for an *ex parte* order" under West Virginia law. She further contended that the children had "significant connections with the Commonwealth of Virginia and there is available in Virginia substantial evidence concerning the children's present or future care, protection, training and personal relationships."

On March 1, 2001, a Virginia circuit judge refused to grant Denise an emergency order, concluding that "the West Virginia court had a jurisdictional basis for its order[.]" The Virginia judge also found that "the contacts between the parties, their children, and Raleigh County, West Virginia, are substantial, and considerably stronger than their nexus with Spotsylvania County, [ ] Virginia." The court therefore concluded that it would violate the purpose and intent of the Uniform Child Custody Jurisdiction Act for the Virginia court to enter custody orders in conflict with those previously made in a West Virginia court.

---

**1.** Counsel for the petitioner characterizes the guardian *ad litem*'s testimony as suggestive of the fact that the guardian *ad litem* was "either mentally unstable or under the influence of mind altering medication," and contends that the "entire proceeding was marred by illegalities and failed to follow the prescribed rules of evidence or procedure."

After a careful review of the hearing transcript, we find no evidence supportive of counsel's ill-considered characterizations.

**2.** The guardian *ad litem* based her recommendation, in part, upon this Court's holding in *Arbogast v. Arbogast*, 174 W.Va. 498, 327 S.E.2d 675 (1984). In *Arbogast*, the Court addressed a situation where a mother repeatedly refused to allow the father or paternal grandparents to visit with the parties' child. We found the mother's actions to be "reprehensible," and stated that "[a] mother's 'very act of preventing ... children of tender age from seeing and being with their father is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the mother is unfit to act as custodial parent.' " *Arbogast*, 174 W.Va. at 505, 327 S.E.2d at 682–83, *quoting Entwistle v. Entwistle*, 61 A.D.2d 380, 384–385, 402 N.Y.S.2d 213, 216 (1978).

**3.** On February 8, 2001, Denise filed a "Verified Petition for Emergency Ex Parte Order" in the

halt the enforcement of the circuit court's February 2, 2001 order.

## II.

 In the instant case, the petitioner seeks to prohibit the enforcement of the circuit court's February 2, 2001 order.[4] We must first determine whether prohibition is appropriate in the instant case. "The rationale behind a writ of prohibition is that by issuing certain orders the trial court has exceeded its jurisdiction, thus making prohibition appropriate." *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 36, 454 S.E.2d 77, 81 (1994) (Cleckley, J., concurring). As such, "writs of prohibition ... provide a drastic remedy to be invoked only in extraordinary situations." 193 W.Va. at 37, 454 S.E.2d at 82.

 There are five factors that this Court will consider in determining whether it is appropriate to issue a writ of prohibition:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear

that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (W.Va. 1996).

In the instant action, we are reviewing the circuit court's entry of an order giving Sherry L. the right to intervene in Denise and Mark's divorce, and further granting her an *ex parte* temporary order altering the custody of. a child in a divorce action. Such *ex parte* temporary orders during the pendency of a divorce are authorized by *W.Va.Code,* 48–2–13(e)(1)(B) [1993] which states, in pertinent part:

(e) An ex parte order granting all or part of the relief provided for in this section may be granted without written or oral notice to the adverse party if:

(1) It appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or such party's attorney can be heard in opposition. The potential injury, loss or damage may be anticipated when the following conditions exist: Provided, That the following list of conditions is not exclusive: ...

(B) The adverse party is preparing to quit the state with a minor child or children of the parties, thus depriving the court of jurisdiction in the matter of child custody; ...

Clearly, under *W.Va.Code,* 48–2–13(e)(1)(B), provided that the appropriate parties and facts are before the court, a court would have the authority to enter an *ex parte* temporary order granting a change of custody of minor children.

 We therefore focus our examination in this case upon the standing of Sherry L. to intervene in the divorce action between Denise and Mark to obtain an *ex parte* tempo-

---

4. The petitioner contends that a writ of prohibition is warranted because the circuit court's order was "void ab initio" since there was no finding of abuse or neglect of the children. The petitioner also contends that prohibition is warranted because abuse and neglect determinations were outside the jurisdiction of the family law master. Alternatively, the petitioner contends that this Court should issue a writ of mandamus

directing the circuit court to amend or set aside the February 2, 2001 order, and that the circuit court should be enjoined from conducting further proceedings.

As set forth in the text, we grant the petitioner a writ of prohibition on another ground. We therefore decline to address the grounds raised in the petitioner's brief.

rary order pursuant to *W.Va.Code*, 48–2–13(e)(1)(B). The respondents indicate that Sherry L. is authorized to intervene in the divorce action by *W.Va.Code*, 48–11–103(2) [1999], a statute entitled "Parties to an action under this article," which states in pertinent part and with emphasis added:

> In exceptional cases the court may, in its discretion, grant permission to intervene to other persons or public agencies whose participation *in the proceedings under this article* it determines is likely to serve the child's best interests.

The statute is therefore clear that intervention is allowed only for the purpose of proceedings "under this article"—in other words, Article 11 of Chapter 48.

Article 11 of Chapter 48 of the *Code* was designed by the Legislature to "set[ ] forth principles governing the allocation of custodial and decision-making responsibility for a minor child when the parents do not live together." *W.Va.Code*, 48–11–101(a) [1999]. We recognize that while Article 11 establishes extensive procedures regarding the custody and parenting of children, it also specifically states that other persons may intervene in exceptional cases only for proceedings under Article 11.

In the instant case, Sherry L. sought to intervene to *obtain an ex parte temporary* order pursuant to *W.Va.Code*, 48–2–13(e)(1)(B)—or, in other words, to participate in proceedings under Article 2 of Chapter 48. We do not believe that this intervention was authorized by the Legislature. Accordingly, applying the third factor of *State ex rel. Hoover v. Berger, supra,* we find that Sherry L.'s attempt to intervene pursuant to *W.Va. Code*, 48–11–103(2) to obtain an *ex parte* temporary order under *W.Va.Code*, 48–2–13(e)(1)(B) was clearly erroneous as a matter of law.

■ In our analysis under *State ex rel. Hoover v. Berger,* we also consider whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief. *W.Va.Code*, 48–2–13(g) [1993] specifically states that "[n]o order granting temporary relief may be the subject of an appeal or a petition for review." *W.Va.Code*, 48–2–13(f) [1993] does, however, allow a party to challenge an *ex parte* tempo-

rary order by seeking a full evidentiary hearing before the family law master within 20 days of the entry of the order. In the instant case, the family law master did require the parties to set a hearing for a full evidentiary hearing within 20 days. However, we believe that when a third party without apparent standing intervenes in an action between a husband and wife to alter the custodial arrangements of infant children, a 20-day delay may not be an adequate means of obtaining relief.

### III.

Accordingly, we conclude on the record before us that Sherry L. did not establish standing to intervene in the divorce of Denise L.B. and Mark B. for purposes of obtaining an *ex parte* temporary order under *W.Va. Code*, 48–2–13(e)(1)(B). We therefore grant the petitioner a writ of prohibition, barring enforcement of the circuit court's February 2, 2001 order.

Writ Granted as Moulded.

Chief Justice MCGRAW, deeming himself disqualified, did not participate in the decision of the Court.

Judge O'HANLON, sitting by temporary assignment.