633 S.E.2d 292

Jeremiah "Bart" MORRIS, Plaintiff Below, Appellant

v.

CROWN EQUIPMENT CORPORATION, a foreign corporation; and Jefferds Corporation, dba Homestead Materials Handling Company, a West Virginia Corporation, Defendants Below, Appellees.

No. 32751.

Supreme Court of Appeals of West Virginia.

Submitted March 29, 2006.

Decided June 29, 2006.

Dissenting Opinion of Justice Maynard June 30, 2006.

Concurring Opinion of Justice Benjamin July 11, 2006.

Concurring Opinion of Justice Albright July 12, 2006.

---

John W. Cooper, Esq., Cooper, Preston & Douglas, Parsons, Thomas W. Pettit, Esq., Barboursville, for Appellant.

Michael J. Farrell, Esq., Robert L. Hogan, Esq., Farrell, Farrell & Farrell, Huntington, for Crown Equipment Corp.

Thomas J. Cullen, J. R., Esq., Adam T. Sampson, Esq., Godell, DeVries, Leech & Dawn, Baltimore, MD, Pro Hac Vice for Crown Equipment Corp.

Lawrence E. Morhous, Esq., M. Hudson McClanahan, Esq., Brewster, Morhous, Cameron, Mullin, Caruth & Moore, Bluefield, for Jefferds Corporation, dba Homestead Materials Handling Co.

STARCHER, J.:

In this case we hold that a plaintiff cannot be denied the right to bring a products liability lawsuit in this state against a West Virginia corporation and an out-of-state corporation merely because the plaintiff is a resident of another state.

## I.

### *Facts & Background*

The complaint in the instant case alleged the following facts: the appellant and plaintiff below, Jeremiah "Bart" Morris ("Morris"), a resident and citizen of Virginia, suffered a severe leg injury at his place of employment in Virginia while operating a stand-up forklift that was distributed and serviced by the appellee and defendant below, Jefferds Corporation, dba Homestead Materials Handling Company ("Jefferds"), a West Virginia corporation. The forklift was designed, manufactured, and distributed by the appellee and defendant below, Crown Equipment Corporation ("Crown"), an Ohio corporation.[1]

On April 30, 2004, Morris filed a civil action against Jefferds and Crown in the Circuit Court of Kanawha County, West Virginia, alleging various products liability theories of recovery, including negligence, strict liability, failure to warn, and breach of warranty, as well as asserting a claim for punitive damages.

Jefferds and Crown filed motions to dismiss the complaint for improper venue based upon *W.Va.Code,* 56–1–1 [2003], which states:

(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered, or some part thereof, is;

(2) If a corporation be a defendant, wherein its principal office is or wherein its mayor, president or other chief officer resides; or if its principal office be not in this state, and its mayor, president or other chief officer do not reside therein, wherein it does business; or if it be a corporation organized under the laws of this state which has its principal office located outside of this state and which has no office or place of business within the state, the circuit court of the county in which the plaintiff resides or the circuit court of the county in which the seat of state government is located shall have jurisdiction of all actions

---

1. The complaint further alleged that Jefferds was incorporated under the laws of West Virginia, had its principal place of business in Kanawha County, West Virginia, conducted business in Kanawha County, West Virginia, and was engaged in the business of servicing, maintaining, providing warnings, providing training, testing, inspecting, marketing, distributing, and selling materials handling equipment, including Crown stand-up forklifts. The complaint further alleged that Jefferds provided, serviced, maintained, tested, inspected, marketed, provided with warnings, provided training for, and distributed to Morris' employer the Crown stand-up forklift upon which Morris was injured.

at law or suits in equity against the corporation, where the cause of action arose in this state or grew out of the rights of stockholders with respect to corporate management;

(3) If it be to recover land or subject it to a debt, where the land or any part may be;

(4) If it be against one or more nonresidents of the state, where any one of them may be found and served with process or may have estate or debts due him or them;

(5) If it be to recover a loss under any policy of insurance upon either property, life or health or against injury to a person, where the property insured was situated either at the date of the policy or at the time when the right of action accrued or the person insured had a legal residence at the date of his or her death or at the time when the right of action accrued;

(6) If it be on behalf of the state in the name of the attorney general or otherwise, where the seat of government is; or

(7) If a judge of a circuit be interested in a case which, but for such interest, would be proper for the jurisdiction of his or her court, the action or suit may be brought in any county in an adjoining circuit.

(b) Whenever a civil action or proceeding is brought in the county where the cause of action arose under the provisions of subsection (a) of this section, if no defendant resides in the county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county where one or more of the defendants resides and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by the change of venue, the court may grant the motion.

(c) *Effective for actions filed after the effective date of this section, a nonresident of the state may not bring an action in a court of this state unless all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state: Provided, That unless barred by the statute of limitations or otherwise time barred in the state where the action arose, a nonresident of this state may file an action in state court in this state if the nonresident cannot obtain jurisdiction in either federal or state court against the defendant in the state where the action arose. A nonresident bringing such an action in this state shall be required to establish, by filing an affidavit with the complaint for consideration by the court, that such action cannot be maintained in the state where the action arose due to lack of any legal basis to obtain personal jurisdiction over the defendant.*

*In a civil action where more than one plaintiff is joined, each plaintiff must independently establish proper venue. A person may not intervene or join in a pending civil action as a plaintiff unless the person independently establishes proper venue. If venue is not proper as to any such nonresident plaintiff in any court of this state, the court shall dismiss the claims of the plaintiff without prejudice to refiling in a court in any other state or jurisdiction.*

(Emphasis added.)

██ Jefferds and Crown argued in their motions to dismiss that Morris is a nonresident[2] of West Virginia, and that no substantial part of Morris' cause of action arose in West Virginia. Therefore, Jefferds and Crown argued, the provisions of *W.Va.Code,* 56–1–1(c)[2003] required dismissal of Morris' case on improper venue grounds, unless Mor-

---

**2.** This opinion will primarily use the term "nonresident" to mean a nonresident or noncitizen of West Virginia; and similarly, "the term" "resident" will mean resident *or* citizen. It is now established that under the Privileges and Immunities Clause there is ordinarily no difference between discrimination based on a person's "residence" and discrimination based on a person's "citizenship."

... [D]espite some initial uncertainty ... it is now established that the terms "citizen" and "resident" are "essentially interchangeable," *Austin v. New Hampshire,* 420 U.S. 656, 662, n. 8[, 95 S.Ct. 1191, 1195 n. 8, 43 L.Ed.2d 530 n. 8] (1975), for purposes of analysis of most cases under the Privileges and Immunities Clause.

ris demonstrated by affidavit that he could not bring his case in some other jurisdiction.

Morris argued in reply that the application of *W.Va.Code,* 56–1–1(c) [2003] to Morris as a nonresident in the fashion suggested by Jefferds and Crown was unconstitutional under the Privileges and Immunities Clause of the United States *Constitution,* Art. IV, Sec. 2, which states in pertinent part: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[3]

Morris argued that the interpretation and application of *W.Va.Code,* 56–1–1(c) [2003] asserted by Jefferds and Crown was constitutionally impermissible because such an interpretation and application would impose a categorical bar upon nonresidents of West Virginia in their access to the West Virginia courts in cases where an otherwise similarly situated resident of West Virginia would not experience such a bar.

Morris further argued that Jefferds' status as a West Virginia corporation established proper venue as to Jefferds, and that because Jefferds served as a venue-giving defendant, Morris could properly join Crown as well.

Finally, Morris argued that the statutory prerequisite for the application of *W.Va. Code,* 56–1–1(c) [2003]—that "all or a substantial part of the acts or omissions giving rise to the claim asserted [did not occur in West Virginia]"—was not established. Morris argued that his Complaint and two subsequent Amended Complaints in fact did set forth allegations establishing that a "substantial part" of the acts or omissions giving rise to his claims did occur in West Virginia.[4]

The circuit court accepted Jefferds' and Crown's arguments based on Morris' nonresidency and *W.Va.Code,* 56–1–1(c) [2003]. By orders dated September 1, 2004, and November 24, 2004, the circuit court granted

---

3.
> *United Bldg. and Const. Trades Council of Camden County and Vicinity v. Mayor and Council of City of Camden,* 465 U.S. 208, 216, 104 S.Ct. 1020, 1026–1027, 79 L.Ed.2d 249, 256–258 (1984).
>> Similarly, while the Court unquestionably has come to treat the terms "citizen" and "resident" in this area as "essentially interchangeable," *Austin v. New Hampshire,* 420 U.S., at 662, n. 8, 95 S.Ct. 1191 it has done so not out of a general disregard for the Constitution's language, but rather because the practical relationship between residence and citizenship is close enough that discrimination on the basis of the one criterion effectively amounts to discrimination based on the other.
>
> *Id.* at 234, 104 S.Ct. at 1036, 79 L.Ed.2d at 249 (1984). Thus, when weighing the persuasiveness and relevance of decisions in cases that statedly rest their reasoning on the premise that discrimination against individuals on the basis of citizenship is constitutionally suspect—while discrimination on the basis of residence is constitutionally inoffensive—the current irrelevance of that distinction in most cases must be taken into account.

3. Morris also raised the Open Courts Clause of the *West Virginia Constitution,* Art. III, Sec. 17, which states that:
> The courts of this State shall be open, and *every person,* for an injury done to him, in his person, property, or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay. (Emphasis added.)

In light of our disposition of the instant case, we do not address this constitutional provision.

4. The Federal venue statute, 28 U.S.C. Sec. 1391, provides that venue lies in any district "in which *a substantial part* of the events or omissions giving rise to the claim occurred ..." (Emphasis added). "[T]his rule ... is open to the possibility that a claim may have arisen in more than one district ...," *Hodson v. A.H. Robins Co.,* 528 F.Supp. 809, 814 (E.D.Va.1981). "[T]he plaintiff is not required to establish that his chosen venue 'has the most substantial contacts to the dispute; rather, it is sufficient that *a* substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.'" *Country Home Prods. v. Schiller–Pfeiffer, Inc.,* 350 F.Supp.2d 561, 568 (D.Vt.2004) (emphasis added, citing *Kirkpatrick v. Rays Group,* 71 F.Supp.2d 204, 212 (S.D.N.Y.1999)). The Supreme Court of Pennsylvania has stated that determining whether conduct is a substantial factor "... simply involves the making of a judgment as to whether defendant's conduct ... is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible." *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111, 114 (1977) (citing the *Restatement (Second) of Torts* sec. 431, comments a. and b.).

For reasons that do not appear in the record, the circuit court did not grant Morris' timely motions for leave to amend his complaint, and denied Morris' requests for leave to conduct limited discovery to establish further facts that would show that venue was proper in West Virginia. A party may amend a pleading by leave of court, and such leave shall be freely given when justice requires. *W.Va.R.Civ.P.* 15(a); *Brooks v. Isinghood,* 213 W.Va. 675, 684, 584 S.E.2d 531 (2003).

the appellees' motions to dismiss. The circuit court also issued an "Order Denying Plaintiff's Motion to Reconsider" on November 29, 2004. Morris appeals from these orders.

## II.

### Standard of Review

■ A trial court's ruling on a motion to dismiss is reviewed under a *de novo* standard. *Kopelman and Associates v. Collins*, 196 W.Va. 489, 492, 473 S.E.2d 910, 913 (1996). Constitutional challenges relating to a statute are reviewed pursuant to a *de novo* standard of review. *West Virginia ex rel. Citizens Action Group v. West Virginia Economic Development Grant Committee*, 213 W.Va. 255, 261–262, 580 S.E.2d 869, 875–876 [2003]. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### Discussion

We begin our discussion by examining the Privileges and Immunities Clause, Art. IV, Sec. 2, of the *United States Constitution*. We then look to what courts have said about access to the courts and the Clause.

### A.

### Privileges and Immunities

In *Austin v. New Hampshire*, 420 U.S. 656, 662, 95 S.Ct. 1191, 1195, 43 L.Ed.2d 530, 535–536 (1975), the Court stated:

The Privileges and Immunities Clause, by making noncitizenship or nonresidence an

---

The circuit court did indicate that it had "considered" the allegations in Morris' amended complaints in ruling on the Jefferds and Crown motions to dismiss.

Morris's Second Amended Complaint stated, in part:

i. Jefferds inadequately serviced and maintained, failed to provide adequate warnings, failed to provide adequate training, provided warranties, failed to adequately test, failed to adequately inspect, failed to adequately analyze the dangers of, failed to adequately disclose the dangers of, failed to guard against the dangers of, marketed, distributed, installed, and/or sold the forklift at issue at or from its offices in West Virginia;

ii. Jefferds made (or failed to make) management level analyses and decisions from its West Virginia corporate headquarters related to service and maintenance schedules and items; training of service and maintenance personnel; product safety and the dangers associated with the use of the product; operator safety; warnings to be provided and the sufficiency thereof; operator training and instruction and the sufficiency thereof; warranties to be provided; testing; inspection; necessary guarding; product lines to be carried; marketing; distribution; sale; installation; associated contractual arrangements or other agreements; and other items related to stand-up forklifts in general, and the forklift which caused the plaintiff's injury in particular;

iii. Jefferds made the contractual arrangements or other agreements related to the provision and installation of the subject forklift to the Alcoa facility, through its office in West Virginia.

iv. The instructions, manuals, warnings, service records, installation records, warranties, and other information about the forklift were provided by Jefferds out of its West Virginia offices;

v. The employees of Jefferds who serviced the forklift both prior to and after installation at the Alcoa facility were provided from its office in West Virginia;

vi. The employees of Jefferds who serviced the forklift both prior to and after installation at the Alcoa facility were trained at its office in West Virginia;

vii. Jefferds failed, at its office in West Virginia, to properly evaluate and investigate the design of Crown's stand-up forklifts and the associated dangers;

viii. Jefferds failed, at its office in West Virginia, to properly evaluate and investigate the accident history of Crown stand-up forklifts, and to warn its customers and end users thereof;

ix. Jefferds failed, at its office in West Virginia, to adequately analyze the hazards to the operators of the forklifts and guard against the same;

x. Jefferds failed, from its offices in West Virginia, to provide adequate operator training and instruction;

xi. Jefferds marketed, distributed, sold, or otherwise installed the forklift from its offices in West Virginia;

x. Jefferds engaged in other, as yet unidentified, substantial acts or omissions related to the claims being asserted.

Although it is not necessary to decide this issue in light of our resolution of the instant case, it seems clear that the plaintiff's Second Amended Complaint does sufficiently allege that a "substantial" portion of the acts or omissions giving rise to Morris' claims occurred in West Virginia.

improper basis for locating a special burden, implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism.

(Footnote omitted.)

In *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 380–382, 98 S.Ct. 1852, 1858–1859, 56 L.Ed.2d 354, 363–364 (1978), the Court quoted from *Paul v. Virginia,* 8 Wall. 168, 180, 19 L.Ed. 357 (1869):

It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.

and from *Hague v. CIO,* 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423, 1434 (1939) (Roberts, J. concurring):

... Article IV, § 2, does not import that a citizen of one State carries with him into another fundamental privileges and immunities which come to him necessarily by the mere fact of his citizenship in the State first mentioned, but, on the contrary, that in any State every citizen of any other State is to have the same privileges and immunities which the citizens of that State enjoy. The section, in effect, prevents a State from discriminating against citizens of other States in favor of its own.

(Footnotes omitted.)

### B.

### *Access to the Courts*

On the subject of access to the courts in the context of the Privileges and Immunities Clause, Am.Jur.2d, *Constitutional Law,* Sec. 769 (2006) says:

Among the privileges and immunities of citizenship is included the right of access to courts for the purpose of bringing and maintaining actions. This privilege includes the right to employ the usual remedies for the enforcement of personal rights in actions of every kind. *While a state may decide whether and to what extent its courts will entertain particular causes, any policy the state may choose to adopt must operate in the same way upon citizens of other states as upon its own, and the privileges it affords to the latter class it must afford to the same extent to the other, but not to any greater extent.*

(Footnotes omitted, emphasis added.)

In *McKnett v. St. Louis & S.F. Ry. Co.,* 292 U.S. 230, 233, 54 S.Ct. 690, 691, 78 L.Ed. 1227, 1229 (1934), the Court stated:

The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution. The privileges and immunities clause requires a state to accord to citizens of other states substantially the same right of access to its courts as it accords to its own citizens.

(Citation omitted.)

In *Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142, 148–149, 28 S.Ct. 34, 35, 52 L.Ed. 143, 146 (1907), the Court stated:

The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal Constitution.

(Citations omitted.)

*       *       *       *       *       *

The state policy decides whether and to what extent the state will entertain in its courts transitory actions, where the causes of action have arisen in other jurisdictions. . . . But any policy the state may choose to adopt must operate in the same way on its own citizens and those of other states. The privileges which it affords to one class it must afford to the other. Any law by which privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other states is void, because in conflict with the supreme law of the land.

In *Canadian Northern Ry. Co. v. Eggen,* 252 U.S. 553, 562, 40 S.Ct. 402, 404, 64 L.Ed. 713, 716 (1920), the Court stated:

> . . . [t]he constitutional requirement is satisfied if the nonresident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens. The power is in the courts, ultimately in this court, to determine the adequacy and reasonableness of such terms. A man cannot be said to be denied, in a constitutional or in any rational sense, the privilege of resorting to courts to enforce his rights when he is given free access to them for a length of time reasonably sufficient to enable an ordinarily diligent man to institute proceedings for their protection.[5]

Finally, a leading commentator has said:

> The familiar rhetorical statements of the unqualified duty of a state to open its courts to citizens of other states are no longer to be taken literally . . . These statements do, however, express the truth that *the privileges-and-immunities clause requires a state to open the doors of its courts to citizens of other states who assert claims against local residents and citizens, even on causes of action predicated upon the law of another state, if it would allow its own citizens to assert such a cause of action . . . .* [I]t is the duty of the governments to make their citizens and persons residing within their borders respond to their civil obligations; any other rule would be intolerable.

(Emphasis added.) Carrie and Schechter, "Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities," 69 Yale Law Journal 1323, 1383 (1960).[6]

From the foregoing authorities, it may be concluded that there is a strong constitutional disfavoring of the categorical exclusion of nonresident plaintiffs from a state's courts under venue statutes when a state resident would be permitted to bring a similar suit.

The appellee Jefferds argues that despite the foregoing authority, *W.Va.Code,* 56–1–1(c) [2003] should be read to set forth a constitutionally valid rule that categorically bars nonresidents from bringing certain lawsuits—even lawsuits against West Virginia residents—when the same lawsuit could be brought by a West Virginia resident.

That is, under Jefferds' proposed reading and application of *W.Va.Code,* 56–1–1(c) [2003], if Mr. Morris and a West Virginia resident had both been injured in the accident in question, the West Virginia resident would encounter no obstacle to filing suit against Jefferds in West Virginia. Only Morris would be so barred, by reason of his residency in Virginia. However, the foregoing-quoted authorities are agreed in stating that Privileges and Immunities Clause counsels against such discrimination against nonresidents and favoritism and protectionism on behalf of residents.

Jefferds argues that this Court is restricted by our decision in *State ex rel. Riffle v.*

---

5. *See also Missouri Pacific Railroad Co. v. Clarendon Boar Oar Co.,* 257 U.S. 533, 535, 42 S.Ct. 210, 211, 66 L.Ed. 354, 356 (1922) ("[The Privileges and Immunities Clause] secures citizens of one State the right to resort to courts of another, equally with citizens of the latter State[.]"); *Miles v. Illinois Central Railroad Co.,* 315 U.S. 698, 704, 62 S.Ct. 827, 830, 86 L.Ed. 1129, 1134, (1942); *Travis v. Yale & Towne Manufacturing Co.,* 252 U.S. 60, 78, 40 S.Ct. 228, 64 L.Ed. 460, 469 (1920).

6. *See also Gober v. Federal Life Ins. Co.,* 255 Mich. 20, 24, 237 N.W. 32, 33 (1931) (applying the Privileges and Immunities Clause) ("If defendant were a domestic corporation, there would be no doubt of plaintiff's right to sue in this State on her cause of action.").

*Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995) from narrowing or constraining a broad, literal application of *W.Va.Code*, 56–1–1(c) [2003] that would categorically bar suits by nonresidents in West Virginia courts in instances when the same suit could be brought by a West Virginian—even cases against West Virginia defendants.

Our decision in *Riffle* simply deferred to Legislatively-prescribed principles governing intra-state venue. However, in *Riffle* this Court explicitly disavowed applying its decision to interstate situations. 195 W.Va. at 128, n. 11, 464 S.E.2d 763, at 770, n. 11. This Court also noted in *Riffle* that none of the parties had raised constitutional challenges to the statutory language at issue in that case. *Id.*, 195 W.Va. at 126 n. 6, 464 S.E.2d at 768 n. 6. Accordingly, *Riffle* does not and could not authorize this Court to disregard the Privileges and Immunities Clause of the *United States Constitution*, when that issue is properly brought, as it affects a provision of our venue statutes in an interstate context.

■ A reading or application of *W.Va. Code*, 56–1–1(c) [2003] that would categorically immunize a West Virginia defendant like Jefferds from suit in West Virginia by a nonresident would contravene the constitutionally permissible scope of the venue statutes in an interstate context. There is no evidence in the cases cited by the parties or identified in this Court's research showing any trend in favor of such distinctions. Additionally, erecting such barriers would con-travene established West Virginia law, including other provisions of *W.Va.Code*, 56–1–1 [2003].[7]

■ It is axiomatic that

. . . wherever an act of the legislature can be so *construed and applied* as to avoid a conflict with the constitution, and give it the force of law, such construction will be adopted by the court.

(Emphasis added.)

*Peel Splint Coal Co. v. State*, 36 W.Va. 802, 15 S.E. 1000, 1004 (1892). A narrow-breadth reading of a statute to assure that its application is constitutionally proper is appropriate as a less-intrusive remedy, *cf. Weaver v. Shaffer*, 170 W.Va. 107, 111, 290 S.E.2d 244, 248 (1980).

We therefore hold that under the Privileges and Immunities Clause of the *United States Constitution*, Art. IV, Sec. 2, the provisions of *W.Va.Code*, 56–1–1(c) [2003] do not apply to civil actions filed against West Virginia citizens and residents.

Applying the foregoing principles to the facts of the instant case, we conclude that the circuit court impermissibly applied *W.Va. Code*, 56–1–1(c) [2003] to treat Mr. Morris' nonresidency as a categorical bar to his bringing a suit in West Virginia against Jefferds. Moreover, Jefferds is a West Virginia corporation, and the provisions of *W.Va.Code*, 56–1–1(c) [2003] do not apply to Morris' suit against Jefferds.

---

7. *W.Va.Code*, 56–1–1(a)(1) [2003] states that venue lies against a domestic corporation doing business in this State wherein its principal office is located, or where its president or principal officer resides. We recognized in *Wetzel County Savings and Loan v. Stern Bros., Inc.*, 156 W.Va., 693, 699, 195 S.E.2d 732, 737 (1973), that the principal place of business of the defendant corporation was an appropriate venue for a lawsuit. In the Syllabus of *State ex rel. Huffman v. Stephens*, 206 W.Va. 501, 526 S.E.2d 23 (1999), we stated:

Whether a corporation is subject to venue in a given county in this State under the phrase in W. Va.Code, 56–1–1(b), "wherein it does business" depends upon the sufficiency of the corporation's minimum contacts in such county that demonstrate it is doing business . . . .

*See* Syllabus, *Brent v. Board of Trustees of Davis and Elkins College*, 163 W.Va. 390, 256 S.E.2d 432 (1979):

If a corporation has made a contract to be performed in whole or in part by any party thereto in a county, has committed a tort in whole or in part in that county, or has manufactured, sold, offered for sale or supplied any product in a defective condition and such product has caused injury to any person or property within that county, it is doing business there and the county's courts have venue to try suits against it which arise from or grow out of such contract, tort or manufacture, sale, offer for sale or supply of such defective product.

*See also McGuire v. Fitzsimmons*, 197 W.Va. 132, 136, 475 S.E.2d 132, 136 (1996):

The plain language of W. Va.Code, 56–1–1(a)(1) [1986] does not limit the venue to one county but provides at least two possible justifications for proper venue: either the residence of the defendants or where the "cause of action arose."

Therefore, the circuit court's dismissal of Morris' suit against Jefferds must be reversed.

### C.

### *Venue–Giving Defendant*

■ We turn our discussion to the circuit court's dismissal of Morris' case against Crown, the manufacturer of the product that Morris says caused his injury. Crown is not a West Virginia corporation, but it is the manufacturer of a product that was sold and distributed by a West Virginia corporation.

■ It must first be recognized that Morris' suit against Crown is essentially a products liability case. Products liability suits typically allege that a manufacturer designed and/or produced a product and put the product into the stream of commerce, and that the product was unsafe or flawed in such a way so as to give rise to the liability of the manufacturer for injuries resulting from the use of the product. The alleged unsafeness or flaw(s) may be as a result of the actual design or construction of the product, or in the adequacy of warnings provided to the user(s) of the product. *See generally Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979) and its progeny.

Products liability cases are a feature of every state's law, and manufacturers who put their products into the stream of interstate commerce expect that they may be called to account in court for the safety of the design and manufacture of their products in other states—even though no "culpable" conduct by the manufacturer relating to the design or manufacture of the product occurred in the jurisdiction in which the claim against the manufacturer is brought. This fundamental principle of products liability law underlies our analysis.

■ A second fundamental principle that must be recognized is that:

This Court follows the venue-giving defendant principle, whereby, once venue is proper for one defendant, it is proper for all other defendants subject to process. Syllabus Point 1, *Staats v. Co-Operative Transit Co.*, 125 W.Va. 473, 24 S.E.2d 916 (1943); *McConaughey v. Bennett's Executors*, 50 W.Va. 172, 179, 40 S.E. 540, 541 (1901). *See also State ex rel. Kenamond v. Warmuth*, 179 W.Va. 230, 231, 366 S.E.2d 738, 739–40 (1988); *McGuire v. Fitzsimmons*, 197 W.Va. 132, 137, 475 S.E.2d 132, 137 (1996); *Union Carbide & Carbon Corp. v. Linville*, 142 W.Va. 160, 164–165, 95 S.E.2d 54, 57 (1956); *Webber v. Offhaus*, 135 W.Va. 138, 146–147, 62 S.E.2d 690, 696 (1950); *McConaughey v. Bennett's Ex'rs*, 50 W.Va. 172, 179, 40 S.E. 540, 542–543 (1901). The principle of the venue-giving defendant has been an established feature of our law for more than one hundred years, and it is closely intertwined with our procedural rules on joinder.[8]

Complementing and reflecting the longstanding venue-giving defendant principle in our case law and our procedural rules, the provisions of *W.Va.Code*, 56–1–1 [2003] state that venue for "*any* civil action" or "*the* cause of action" is appropriate "wherein *any* of the defendants may reside . . ." and "where *one or more* of the defendants resides." *W.Va. Code*, 56–1–1(a) and (b) [2003] (emphasis added).

Crown argues that despite the fact that products liability cases are commonly brought against manufacturers in jurisdictions other than where the product was designed or built, and despite West Virginia's settled venue-giving defendant principle, because Morris is a nonresident of West Virginia, Morris must show *separate acts by Crown that occurred in West Virginia* (*i.e.*, Morris must separately "establish venue" for

---

**8.** The mandatory joinder rule of *W.Va.R.Civ.P.*, Rule 19(a) requires a plaintiff to join in one action all persons who are subject to service of process and in whose absence complete relief cannot be accorded among those already parties. Similarly, the permissive joinder rule of *W.Va. R.Civ.P.*, Rule 20, permits a plaintiff to join as defendants all persons whose liability arises "out of the same transaction, occurrence, or series of occurrences and if any question of law or fact common to all defendants will arise in the action." The goal of both mandatory and permissive joinder is the promotion of judicial economy by preventing both the duplication of effort and the uncertainty embodied in piecemeal litigation.

Crown) before Morris can join Crown as a defendant along with Jefferds in Morris' suit in West Virginia.

In support of this argument, Crown points to language in *W.Va.Code*, 56–1–1(c)[2003] which would bar suit by a nonresident in West Virginia "... unless all or a substantial part of the acts or omissions giving rise to *the claim* asserted occurred in this state." Crown notes that *W.Va.Code*, 56–1–1(a) and (b) [2003] use the terms "cause of action" or "civil action" when saying that a case may be brought wherever one of the defendants is located, see discussion *supra*—while *W.Va. Code*, 56–1–1(c)[2003] uses the term "claim." Crown argues that Morris therefore must separately establish venue for his "claim" against Crown, by showing culpable "acts or omissions" by Crown that occurred in West Virginia.

A rule in accord with Crown's argument would run counter to established principles of joinder and judicial economy. Modern economies operate in complex, multi-jurisdictional networks of designers, manufacturers, distributors, retailers, purchasers, and users. When reasonably possible, legal claims involving these sorts of parties that arise from particular incidents and injuries involving a product should be resolved in a unitary forum.

As this Court recently stated in *Charleston Area Medical Center, Inc. v. Parke–Davis*, 217 W.Va. 15, 21, 614 S.E.2d 15, 21 (2005), quoting *Board of Ed. v. Zando, et. al.*, 182 W.Va. 597, 603–604, 390 S.E.2d 796, 802–803:

> [t]he fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice—to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts.

In the instant case, where a substantial part of the culpable acts or omissions of one joint tortfeasor (Jefferds) are alleged to have occurred in West Virginia, and where the culpable acts or omissions of a second joint tortfeasor (Crown) are alleged to have oc-curred outside West Virginia, a requirement that the plaintiff independently "establish venue" with respect to the out-of-state tortfeasor would effectively prevent joinder of the out-of-state tortfeasor. This would be an absurd result, contrary to all established procedure.

Additionally, Crown's assertion that the statute's use of the word "claim" supports Crown's argument is not well-founded. *Black's Law Dictionary, Centennial Edition,* 6th Ed.1990, defines the term "claim," *inter alia*, as "[a] cause of action." In *Barker v. Traders Bank,* 152 W.Va. 774, 780, 166 S.E.2d 331, 335 (1969), this Court stated that "Rule 8(a), R.C.P., contemplates a succinct *complaint* containing a plain statement of *the* nature of *the claim* together with a demand for judgment." (Emphasis added). *Cf. Sticklen v. Kittle,* 168 W.Va. 147, 162, 287 S.E.2d 148, 156 (1981) (equating "claim" and "complaint").

There is certainly a sufficient overlap and identity between the ordinary meaning of the terms "claim," "civil action," and "cause of action," as they are used in *W.Va.Code*, 56–1–1 [2003] so as to weigh against finding that the use of the word "claim" in *W.Va.Code*, 56–1–1(c)[2003] establishes a novel rule that would fragment cases, foster piecemeal litigation, and radically alter settled procedures.

Additionally, Crown's suggestion that such a rule should be applied only to nonresidents runs headlong into the foregoing-discussed constitutional principles that strongly disfavor discrimination on the basis of residency in access to the courts. Application of these principles further weighs against such a reading of the statutory language.

For these reasons, this Court will not derive such an intent from the statute's use of the word "claim," nor enforce such a rule. Following our settled law, we hold that *W.Va.Code*, 56–1–1(c) [2003] does not require a nonresident plaintiff to separately establish venue for each defendant.

Based on this holding, the circuit court's dismissal of Crown as a defendant must be reversed.

## IV.

### Conclusion

The circuit court's dismissal of the plaintiff's claims against the appellants is reversed and this case is remanded.

Reversed and Remanded.

MAYNARD, Justice, dissenting:

(Filed June 30, 2006)

I would have affirmed the circuit court's dismissal of the appellant's lawsuit because I do not believe that a construction of W.Va. Code § 56–1–1(c) that prevents the appellant from bringing his action in Kanawha County violates the Privileges and Immunities Clause.

In *Douglas v. New Haven R. Co.*, 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929), the Supreme Court considered the constitutionality of a New York statute that provided:

An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only; .... 4. Where a foreign corporation is doing business within this State.

279 U.S. at 386, 49 S.Ct. 355, 73 L.Ed. 747. The plaintiff's injuries in *Douglas* were inflicted in Connecticut where the plaintiff was a citizen and resident, and the defendant was a Connecticut corporation which did business in New York. The plaintiff brought her suit in New York, and the trial court dismissed it under the above statute. The New York appellate courts upheld the dismissal.

On appeal to the Supreme Court, the plaintiff argued that the statute as construed by the trial court "makes a discrimination between citizens of New York and citizens of other States, because it authorizes the Court in its discretion to dismiss an action by a citizen of another State but not an action brought by a citizen of New York." 279 U.S. at 386, 49 S.Ct. at 356. The Supreme Court rejected this argument and affirmed the dismissal. The Court explained:

It is said that a citizen of New York is a resident of New York wherever he may be living in fact, and thus that all citizens of New York can bring these actions, whereas citizens of other States can not unless they are actually living in the State. But however often the word resident may have been used as equivalent to citizen, and for whatever purposes residence may have been assumed to follow citizenship, there is nothing to prohibit the legislature from using "resident" in the strict primary sense of one actually living in the place for the time, irrespective even of domicile. If that word in this statute must be so construed in order to uphold the act or even to avoid serious doubts of its constitutionality we presume that the Courts of New York would construe it in that way; as indeed the Supreme Court has done already in so many words.

\*      \*      \*      \*      \*      \*

Construed as it has been, and we believe will be construed, the statute applies to citizens of New York as well as to others and puts them on the same footing. There is no discrimination between citizens as such, and none between nonresidents with regard to these foreign causes of action.... There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned.

279 U.S. at 386–387, 49 S.Ct. at 356 (citations omitted); *see also State of Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 4, 71 S.Ct. 1, 2–3, 95 L.Ed. 3 (1950) (indicating that "if a State chooses to prefer residents in access to often overcrowded Courts and to deny such access to all nonresidents, whether its own citizens or those of other States, it is a choice within its own control").

*Douglas* was relied upon by the Oklahoma Supreme Court in the case of *St. Louis–San Francisco Ry. Co. v. Superior Court*, 276 P.2d 773 (1954). In that case, the Court was presented with the issue "whether a ... court of this state can, because of inconvenience to court and parties, dismiss an action brought by a non-resident plaintiff against a foreign corporation on a cause of action arising outside this state." 276 P.2d at 775. In

answering this question in the affirmative, the Court, citing *Douglas*, explained:

> [A] state may not, by reason of the privileges and immunities clauses of the federal Constitution, allow suits in its courts by its own non-resident citizens for liability arising out of conduct outside that state and discriminatorily deny access to its courts to a non-resident who is a citizen of another state. But if a state chooses to prefer residents in access to often over-crowded courts to deny such access to all non-residents, whether its own citizens or those of other states, it is a choice within its own control.

276 P.2d at 777.[1]

I would construe W.Va.Code § 56–1–1(c) to apply to all nonresidents, both citizens and noncitizens of West Virginia. In other words, this statute would also prevent a West Virginia citizen who is residing in Ohio for the purpose of employment and who is injured in Ohio by machinery manufactured by a West Virginia company from suing that company in West Virginia. Such a construction, according to the law set forth above, would not offend the Privileges and Immunities Clause.

W.Va.Code 56–1–1(c) serves an important purpose. Specifically, it is designed to give the residents of this State, who after all pay for our courts, ready access to them when needed. This can be effectively achieved only by preventing nonresidents from abusing our courts by flooding them with litigation, not because they do not have a forum elsewhere, but simply because they believe they may achieve a better result here. For example, in the case of *Grimmett v. CSX Transportation, Inc.*, which was recently referred to the Mass Litigation Panel, approximately 71 out of 79 plaintiffs are nonresidents of West Virginia. In fact, these plaintiffs were involved in actions that were originally filed in Gwinnett County, Georgia. These nonresident plaintiffs who may have very legitimate claims are nevertheless expending the time and limited resources of our State court system, to the detriment of resident plaintiffs, when their claims could have been brought elsewhere. Unfortunately, the majority opinion eviscerates a statutory safeguard against this type of abuse.

Accordingly, for the reasons stated above, I dissent.[2]

BENJAMIN, Justice, concurring in result only:

(Filed July 11, 2006)

I agree with the majority's decision to reverse the trial court's dismissal of this matter and remand the case for further proceedings. I do so, however, not upon the constitutional analysis invoked by the majority, but upon far simpler grounds. In my opinion, the plain terms of W. Va.Code § 56–1–1(c) (2003), require reversal of the trial court's dismissal of this action and a remand to resolve the factual question of whether "all or a substantial part of the acts or omissions giving rise to the claim occurred in this state" based upon the allegations contained in the amended complaint and upon Jefferds Corporation's ["Jefferd" 's] status as a West Virginia corporation.[1] If a factual basis is

---

1. The majority indicates in footnote 2 of its opinion that there is no distinction for purposes of the Privileges and Immunities Clause between discrimination on the basis of residency and discrimination on the basis of citizenship. It should be noted that my construction of the statute at issue makes no such distinction. Rather, it treats all nonresidents, both citizens and noncitizens, the same for the purpose of applying W.Va. Code § 56–1–1(c).

2. South Carolina has a similar provision in its venue statute concerning foreign corporations as defendants. According to S.C.Code Ann. § 15–5–150 (1976),

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court; ... (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

1. As referenced in n. 4, *supra*, of the majority's opinion, it is not readily apparent from the record why Morris' motion to amend his pleadings was denied. Rule 15(a) of Rules of Civil Procedure provides that leave to amend shall be freely given when justice requires. However, trial courts should also insure that parties not abuse our Rules with fraudulent or deliberately exaggerated pleadings. In such cases, it is expected that trial courts will use the full panoply of sanctions available, beginning with Rule 11 of the West Virginia Rules of Civil Procedure.

confirmed for Morris' allegations regarding Jefferds' West Virginia operations and acts related to his claim, venue is proper in West Virginia pursuant to W. Va.Code § 56–1–1(c) (2003). Thus, resolution of this matter does not now necessitate addressing the constitutionality of West Virginia's venue statute.

This Court has repeatedly stated that it will avoid invalidating a statute on constitutional grounds where reasonably possible. In 1965, this Court held that:

> [i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syl. Pt. 1, *State ex rel Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965); *see also*, Syl. Pt. 2, *State ex rel Riley v. Rudloff*, 212 W.Va. 767, 575 S.E.2d 377 (2002) (quoting *Gainer*). Indeed, "[t]he well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider a statute to be a general law." Syl. Pt. 8, *State ex rel Heck's Inc. v. Gates*, 149 W.Va. 421, 141 S.E.2d 369 (1965). More recently, this Court summarized its duty in addressing the constitutionality of statutes by stating:

Only when it can be said beyond a reasonable doubt that a law violates the Constitution of this State will we invalidate a legislative enactment on constitutional grounds. Thus, [w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment. In this regard, [c]ourts will never impute to the legislature intent to contravene the constitution of either the state or the United States, by construing a statute so as to make it unconstitutional, if such construction can be avoided, consistently with law, in giving effect to the statute, and this can always be done, if the purpose of the act is not beyond legislative power in whole or in part, and there is no language in it expressive of specific intent to violate the organic law.

*Carvey v. State Bd. of Educ.*, 206 W.Va. 720, 727, 527 S.E.2d 831, 838 (1999) (internal quotations and citations omitted). This mandated exercise of judicial restraint in addressing a challenge to the constitutionality of legislation should have, in my opinion, resulted in the majority resolving this matter through application of plain statutory language. Morris' appeal of the dismissal of his lawsuit may properly be resolved by applying the plain language of W. Va.Code § 56–1–1, without addressing the constitutionality of W. Va.Code § 56–1–1(c).

Morris brought his product liability suit against Crown Equipment, an Ohio corporation and the manufacturer of the forklift at issue, and Jefferds, a *West Virginia* corporation and the forklift's distributor/seller and maintenance service provider. Pursuant to our venue statute, a civil action may be brought against a West Virginia corporation in any county where its principle office is located or where its president or chief officer resides. W. Va.Code § 56–1–1(a)(2).[2] Mor-

---

2. W. Va.Code § 56–1–1(a)(2) provides:

> Any civil action or other proceeding, except where it is otherwise specifically provided, may hereafter be brought in the circuit court of any county:
>
> .    .    .    .    .
>
> If a corporation be a defendant, wherein its principal office is or wherein its mayor, presi-

dent or other chief officer resides; or if its principal office be not in this state, and its mayor, president or other chief officer do not reside therein, wherein it does business; or if it be a corporation organized under the laws of this state which has its principal office located outside of this state and which has no office or place of business within the state, the circuit

ris alleged in his complaint that Jefferds' principle office was located in Kanawha County, the county in which he filed his lawsuit. Jefferds denies in its brief before this Court that its principle office is located in Kanawha County. However, in its order of November 24, 2004, the circuit court found that Jefferds' "officers" live in Kanawha County. Without resolving the conflict regarding the location of Jefferds' principle office in Kanawha County, the trial court's finding regarding Jefferds' officers' residence demonstrates venue was properly established in Kanawha County, as to Jefferds, pursuant to W. Va.Code § 56–1–1(a)(2).

The circuit court, however, dismissed Morris's suit due to the 2003 enactment of W. Va.Code § 56–1–1(c), which provides, in relevant part, that "a nonresident of the state may not bring an action in a court of this state unless all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state[.]" Finding Morris was a resident of Virginia and the forklift accident at issue occurred in Virginia, the circuit court found that Kanawha County, West Virginia, was an improper venue for Morris' claims against Jefferds. The circuit court's order reflected that it considered the allegations against Jefferds contained in Morris' proposed amended complaint, although the circuit court did not permit the amendment of Morris' complaint.

In the proposed amended complaint, Morris set forth numerous allegations of conduct occurring in West Virginia giving rise to his claims against Jefferds.[3] If true, these allegations may indeed satisfy W. Va.Code

§ 56–1–1(c)'s requirement that "all or a substantial part" of the acts underlying Morris' claims against Jefferds occurred in West Virginia. In my opinion, the circuit court prematurely dismissed Morris' claims. Morris should have been given the opportunity to conduct limited discovery on the venue issue. If discovery revealed that "all or a substantial part" of Jefferds' acts or omissions occurred in West Virginia, as alleged, venue is proper in Kanawha County. Therefore, I would reverse and remand this matter for the purpose of conducting limited discovery to resolve the crucial factual dispute as to whether the requirements of W. Va.Code § 56–1–1(c) are met in this matter. Fundamental fairness requires more than a resident defendant's mere denial of a nonresident's allegation of proper venue and the factual allegations supporting such venue before access to our courts is denied under W. Va.Code § 56–1–1(c). If Morris were able, upon remand, to properly establish venue as to Jefferds, a West Virginia corporation, in Kanawha County, he likewise establishes proper venue for his entire lawsuit.[4] The majority, however, has relieved Morris of this obligation by simply invalidating W. Va. Code § 56–1–1(c).

As noted above, I do not believe that the proper resolution of this appeal requires this Court to address the constitutionality of W. Va.Code § 56–1–1(c). However, because the majority hinges its opinion in this case on the constitutionality of this non-resident venue statute, some observations regarding this statute are appropriate in light of Article IV,

---

court of the county in which the plaintiff resides or the circuit court of the county in which the seat of state government is located shall have jurisdiction of all actions at law or suits in equity against the corporation, where the cause of action arose in this state or grew out of the rights of stockholders with respect to corporate management[.]

Under this statutory provision, venue is proper in any county where a corporate defendant's principle place of business is located. Where a West Virginia corporation has its principle place of business in another state, our venue statute then imposes a secondary requirement that the cause of action arose in this state for the establishment of proper venue. As Jefferds is a West Virginia corporation with its principle place of business in West Virginia, Morris was not, under this

statutory provision, also required to demonstrate that his cause of action against Jefferds arose in West Virginia.

3. *See, supra,* n. 4, majority opinion.

4. As noted by the majority, West Virginia follows the venue-giving defendant principle which provides that once venue is established for one defendant, it is proper for all defendants. While W. Va.Code § 56–1–1(c) requires that each plaintiff independently establish proper venue, it is silent as to independent defendants, a point recognized in the majority opinion at Syllabus Point 3, *supra.* Since the Legislature has not addressed the issue of individual defendant venue, that issue is not now before this Court.

Section 2 of the Constitution of the United States, the Privileges and Immunities Clause.[5]

Contrary to the majority's suggestion, the Privileges and Immunities Clause does not categorically bar distinctions based upon residency for venue purposes. In *State of Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 3–4, 71 S.Ct. 1, 95 L.Ed. 3 (1950), Justice Frankfurter recognized that under:

> the Privileges–and–Immunities Clause of the Constitution, a State may not discriminate against citizens of sister States. Art. IV, s 2. Therefore Missouri cannot allow suits by nonresident Missourians for liability under the Federal Employers' Liability Act arising out of conduct outside that State and discriminatorily deny access to its courts to a non-resident who is a citizen of another State. *But if a State chooses to '(prefer) residents in access to often overcrowded Courts' and to deny such access to all nonresidents, whether its own citizens or those of other States, it is a choice within its own control.*

(Emphasis added.) In *Mayfield*, Justice Frankfurter relied upon Justice Holmes's similar opinion in *Douglas v. New Haven Ry. Co.*, 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929), for the proposition that a state may preclude non-residents from filing claims in state courts without violating the Privileges and Immunities Clause in certain circumstances. In *Douglas*, Justice Holmes, writing for the Court, noted:

> A distinction of privileges according to residence may be based upon rational considerations[.] . . . There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience

and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned.

*Douglas*, 279 U.S. at 387, 49 S.Ct. 355.[6]

In both *Mayfield* and *Douglas*, the United States Supreme Court recognized that the need to address an overcrowded court system may be a legitimate, rational basis for discriminating between residents' and non-residents' access to a state court. So long as the West Virginia Legislature provides such a rational basis for discriminating between residents and non-residents when enacting, or revising, a venue statute which prohibits certain suits from being filed in this State by non-residents, it arguably should withstand constitutional scrutiny under the Privileges and Immunities Clause.

Overcrowding of West Virginia courts caused by numerous suits filed by nonresidents against foreign corporations has long been a perceived problem in this State. The Legislature's enactment of W. Va.Code § 56–1–1(c) in 2003 was perhaps an effort to address this problem. However, because the Legislature failed to articulate a proper rational basis for discriminating between residents and non-residents for purposes of establishing venue in our courts, this Court cannot now, recognizing the limitations of our Constitutional charge, speculate as to the Legislature's intentions. Without such a proper rational basis for enacting a seemingly discriminatory venue statute, a court left to speculate as to both proper and improper rationales for residency discrimination cannot rightly guess in favor of one possible rationale any more than it can in favor of another.[7]

5. The Privileges and Immunities Clause provides, in pertinent part, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

6. In *Douglas*, the Court upheld·the constitutionality of a New York statute which provided that "[a]n action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only; . . . 4. Where a foreign corporation is doing business within this State." *Id.* at 386, 49 S.Ct. 355. In so doing, the Court rejected an argu-

ment that the statute violated the Privileges and Immunities clause by discriminating between citizens of New York and other states by authorizing the dismissal of suits filed by non-citizens of New York but not of those filed by New York citizens.

7. The Legislature might consider setting forth its findings relating to the need for a discriminatory venue section, such as W. Va.Code § 56–1–1(c), should it choose to further consider such a venue section in the future.

ALBRIGHT, J., concurring:

(Filed July 12, 2006)

I concur with the reasoning and conclusions in this Court's majority opinion in the instant case. I write separately to amplify several of the points made in that opinion.

A.

The venue provisions of *W.Va.Code*, 56–1–1(c)[2003] that are at issue in the instant case address the ability of a court that has jurisdiction over the person(s) and subject matter of a case to nevertheless abstain from the exercise of that jurisdiction, on venue grounds, when another court is available and more appropriate. The doctrine that permits such an abstention—which can apply in both intrastate and interstate contexts—is known as *forum non conveniens*.[1]

In the interstate application of the *forum non conveniens* doctrine, "the state announcing such a policy disclaims any interest in providing a forum for litigation within the scope of the policy, *i.e.*, litigation between foreigners on causes of action predicated on the laws of another state." Carrie and Schechter, "Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities," 69 Yale Law Journal 1323, 1383 (1960).

A number of courts and commentators have discussed the effect of the Privileges and Immunities Clause of the *United States Constitution* on the exercise of the doctrine of *forum non conveniens:*

... [w]e perceive no reason why the doctrine [*forum non conveniens*] should not be available in this State, upon a proper showing and *without discrimination against either noncitizens of California* or against FELA cases.

*Price v. Atchison, T. & S.F. Ry. Co.*, 42 Cal.2d 577, 581, 583, 268 P.2d 457, 460 (1954) (emphasis added).

... [t]he application of the doctrine [*forum non conveniens*] so as to refuse jurisdiction in an action brought by a citizen of another state will not violate Article 4 *if jurisdiction would also have been refused had the plaintiff been a citizen of the forum state.*

*Zurick v. Inman*, 221 Tenn. 393, 399, 426 S.W.2d 767, 770 (1968) (emphasis added).

... [M]any courts have followed the general rule that applying the doctrine of forum non conveniens to refuse jurisdiction in an action brought by a citizen of a foreign state does not violate the Privileges and Immunities Clause if jurisdiction would be refused in an action brought by a citizen of the forum state in the same circumstances. A particular state may apply the doctrine of *forum non conveniens, as long as it is applied to citizens and noncitizens alike.*

*Owens Corning v. Carter*, 997 S.W.2d 560, 569 (Tex.1999) (footnote omitted) (emphasis added).

However, the doctrine [of *forum non conveniens*], as we construe it, is *non-discriminatory* and does not turn on considerations of domestic residence or citizenship as against foreign residence or citizenship. It turns, rather, on considerations of convenience and justice and it may, therefore, be applied for and against domestic residents and citizens as well as for and against foreign residents and citizens.

*Gore v. U.S. Steel Corp.*, 15 N.J. 301, 311, 104 A.2d 670, 675–676 (1954) (emphasis added).

A state that restricts forum non conveniens to cases involving plaintiffs from other states may run afoul of the Privileges and Immunities Clause of the U.S. Constitution.

---

1. In their briefs, the parties to the instant case agree that *W.Va.Code*, 56–1–1(c) [2003] addresses *forum non conveniens* principles and procedures in an interstate context, just as earlier parts of the statute address these principles and procedures in an intrastate context. *See State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995). In Syllabus Point 1 of *Cannelton Indus-*

*tries, Inc. v. Aetna Casualty & Surety Co.* 194 W.Va. 203, 460 S.E.2d 18 (1994) we stated:

The common law doctrine of forum non conveniens is simply that a court may, in its sound discretion, decline to exercise jurisdiction to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute.

Note, "Georgia On the Nonresident Plaintiff's Mind," 36 Ga. L.Rev. 1109, 1142 n. 243, (2002).[2]

In *Norfolk and Western Ry. Co. v. Tsapis*, 184 W.Va. 231, 234–235, 400 S.E.2d 239, 242–243 (1990), this Court stated:

> A number of other courts have reached the same conclusion that the common law doctrine of *forum non conveniens* can be utilized to deny access to courts to nonresident plaintiffs in FELA cases *in appropriate circumstances* without running afoul of the Privileges and Immunities Clause.
>
> \*    \*    \*    \*    \*    \*
>
> ... no one factor [is] necessarily dispositive in a *forum non conveniens* analysis and ... the doctrine [has] to be applied flexibly on a case-by-case basis [citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).]

(Emphasis added.)[3]

Based on the foregoing authority (and the authority cited in the majority opinion), it appears that in applying a *forum non conveniens* venue statute like *W.Va.Code*, 56–1–1(c) [2002], it is constitutionally permissible to *take into account* the residency or citizenship of the plaintiff, along with other appropriate factors. However, it is constitutionally impermissible to treat nonresidency in or noncitizenship of West Virginia as a *categorical* ground requiring the courts of West Virginia to dismiss a case on the basis of *forum non conveniens*, without regard to other factors that may be relevant. And of course,

the *forum non conveniens* principles simply do not apply where the defendant is a West Virginia entity or the cause of action arose in West Virginia.

### B.

This Court's opinion in the instant case correctly concludes that our decision in *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995) cannot and does not diminish this Court's duty to assure that all venue-related statutory language is read and applied in a constitutional fashion.

Notably, the *Riffle* opinion did not mention *State ex rel. Kenamond v. Warmuth*, 179 W.Va. 230, 232, 366 S.E.2d 738, 740 (1988), which states:

> Procedural statutes relating to venue, like West Virginia Code § 56–1–1, are effective only as rules of court and are subject to modification, suspension or annulment by rules of procedure promulgated by this Court. *W.Va. Const.* art. 8, § 3; *W.Va.Code* § 51–1–4 (1981 Replacement Vol.); *W.Va.Code* § 51–1–4a (1981 Replacement Vol.). Ultimately, civil venue questions are governed by the procedural rules promulgated by this Court, the procedural statutes that are not inconsistent with those procedural rules, and the opinions issued by this Court interpreting those procedural rules and statutes. [Footnote omitted].[4]

Applying this settled principle, this Court recently held that statutory "provisions ... [were] enacted in violation of the Separation

---

**2.** *See also Adkins v. Underwood*, 520 F.2d 890 (7th Cir.1975) (Illinois Supreme Court did not violate the privileges and immunities clause in view of apparent well-established policy of Illinois courts of allowing nonresident access to Illinois courts and of evenhanded application of *forum non conveniens* doctrine).

**3.** Am.Jur.2d, Constitutional Law, Sec. 769 [2006] states:

> Insofar as such is not prohibited by the Privileges and Immunities Clause, the fact that the parties to an action are noncitizens or nonresidents of the state *may be taken into consideration* by a court in determining whether to apply the doctrine of forum non conveniens, and the application of such doctrine so as to refuse to exercise jurisdiction in an action brought by a citizen of an American sister state

is not repugnant to the Privileges and Immunities Clause if, under the particular circumstances, the exercise of jurisdiction would have been refused had the plaintiff been a citizen of the forum state ... [emphasis added].

"The Supreme Court has permitted nonresidence *to be taken into account* in granting forum non conveniens dismissals[,]" Michael Hoffheimer, "Mississippi Conflicts of Law," 67 Miss. L.J. 175, 321 (1997) (emphasis added).

**4.** *See also Hinchman v. Gillette*, 217 W.Va. 378, 391, 618 S.E.2d 387, 400 (2005) (Davis, J., concurring) (procedural statutes are effective only as rules of court and are subject to modification, suspension, or annulment by rules of procedure promulgated by this Court).

of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as they address procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution." Syllabus Point 3, in part, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005).

> In *Louk*, we stated:
>
> This Court has made clear that "[t]he legislative, executive, and judicial powers ... are each in its own sphere of duty, independent of and exclusive of the other; so that, whenever a subject is committed to the discretion of the [judicial], legislative or executive department, the lawful exercise of that discretion cannot be controlled by the [others]." *Danielley v. City of Princeton*, 113 W.Va. 252, 255, 167 S.E. 620, 622 (1933). Promulgation of rules governing litigation in the courts of this State rests exclusively with this Court.
>
> *Id.*, 218 W.Va. at 93, 622 S.E.2d at 800.[5]

Therefore, it is clear that the Separation of Powers Clause, Art. V, Sec. 1 of the *West Virginia Constitution*, authorizes the substantive review and limitation of statutes in the areas of venue and *forum non conveniens* by the supreme court of appeals insofar as the statutes (1) address procedural litigation matters that are regulated exclusively by the supreme court of appeals pursuant to the Rule–Making Clause, Article VIII, Sec. 3 of the West Virginia Constitution; or (2) present other constitutional concerns.

## C.

Finally, it should be noted that the result in each of the cases relied upon by the dissenting opinion in the instant case turns and relies on a purported distinction between non-residents and non-citizens, in applying the Privileges and Immunities Clause. The dissent replicates that distinction by finding that the application of *W.Va.Code*, 56–1–1(c) [2002] in the instant case to dismiss Mr. Morris' case is constitutionally permissible, because this West Virginia statute facially applies to both citizen and non-citizen "non-residents."[6]

As this Court's opinion makes clear at note 2, the notion that there is a substantial and dispositive constitutional distinction between discrimination on the basis of residency and discrimination on the basis of citizenship has been set aside by a series of decisions by the United States Supreme Court. Authority grounded in this obsolete distinction is therefore fairly unpersuasive; and it seems that any discriminatory scheme, whether against non-residents or non-citizens, is of constitutional dimension and must be measured against a standard higher than a "rational basis." A court's ability to "take into account" the residency of a plaintiff in a true *forum non conveniens* situation, which I believe is permissible, is more respecting of the constitutional values at stake than any categorical discrimination.

Accordingly, I concur with this Court's opinion and judgment.

**5.** *See also* Syllabus Point 1, *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977) ("Under Article VIII, Section 8 of the Constitution of West Virginia ... administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them."); *Williams v. Cummings*, 191 W.Va. 370, 372, 445 S.E.2d 757, 759 (1994) ("This statute ... is in conflict with and superseded by T.C.R. XVII, which addresses the disqualification and temporary assignment of judges, and thereby dispenses with [the statute] ...;)" *Meadows on Behalf of Professional Employees of West Virginia Educ. Ass'n v. Hey*, 184 W.Va. 75, 79 n. 4, 399 S.E.2d 657 n. 4 (1990) ("We note that the procedural statutes relating to venue are effective only as rules of court and subject to modification, suspension, or annulment by rules of procedure promulgated by the Supreme Court.") (citation omitted).

**6.** The thoughtful concurrence by Justice Benjamin also cites to *State of Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 3–4, 71 S.Ct. 1, 95 L.Ed. 3 (1950), a case that turns on a distinction between discrimination against "citizens" of other states and discrimination against "residents" of other states.