WETZEL COUNTY SAVINGS AND LOAN COMPANY, *a corp.*

*v.*

STERN BROS., INC., *a Delaware Corporation*

(No. CC 882)

Submitted April 25, 1972.          Decided April 10, 1973.

Rehearing Denied May 25, 1973.

694

*James M. Pyles,* for plaintiff.

*Wilson, Ruley & Hill, Daniel A. Ruley, Jr.,* for defendant.

HADEN, JUDGE:

Wetzel County Savings and Loan Company, a domestic corporation, hereinafter referred to as Wetzel, instituted a civil action in the Circuit Court of Wetzel County against

Stern Bros., Inc., a foreign corporation, hereinafter referred to as Stern, to recover damages for breach of contract. Stern filed a motion to dismiss the action for improper venue pursuant to Rule 12(b)(3), W. Va. R.C.P., on the ground that neither the cause of action nor any part thereof arose in Wetzel County, but rather, wholly arose in Wood County, West Virginia.

The circuit court overruled the motion to dismiss, and pursuant to West Virginia Code, Chapter 58, Article 5, Section 2, (1931) as amended, on its own motion certified the following question of law: "Whether . . . the cause of action . . . or any part thereof, arose in Wetzel County, West Virginia." This is the sole issue presented to this Court for answer.

According to the facts developed by the pleadings, the principal place of business of Wetzel is located in New Martinsville, Wetzel County, and the principal place of business of Stern is in Parkersburg, Wood County. By a contract of March 18, 1963, Wetzel purchased certain unmatured government bonds from Stern for the sum of $50,935.97. Included in the agreement was the following provision:

> "(3) STERN agrees within fifteen (15) days of receiving written notice from WETZEL to purchase from WETZEL the above described bonds, or any of them, at a price equal to the original cost of said bonds, or any of them, when purchased by WETZEL, plus accrued interest, and in the event that STERN should not purchase after proper demand, then WETZEL shall have the right to sell same on the open market and shall be entitled to recover from STERN the difference between the original cost and the price obtained from such sale. No duty to give STERN notice is imposed hereby, but the exercise of the rights granted by this paragraph shall be at WETZEL'S sole discretion."

By letter dated March 20, 1971 and mailed in Wetzel County, the president of Wetzel requested Stern to repurchase the bonds as provided in the agreement. By a reply dated April 27, 1971, and mailed in Wood County,

the president of Stern refused to repurchase the bonds and denied any responsibility or liability of any kind. Subsequently, Wetzel sold the bonds at a loss of nineteen thousand, two hundred thirty-seven dollars and fifty cents ($19,237.50), and thereafter brought the action to collect that amount plus interest and costs. Stern was served with process through the auditor.

As to proper venue, Wetzel contends that at least a part of the cause of action arose in the forum county in that the agreement was partially made in Wetzel County; the language of the agreement contemplates performance in Wetzel County; the letter requesting the repurchase was prepared, executed and mailed in Wetzel County and such demand was an essential part of the cause of action; the provisions relating to demand for repurchase, refusal, resale and recovery of loss amount to a "to pay" contract under West Virginia law requiring the performance— payment, at the residence of the creditor; and the consequences of the breach—the damage, occurred in Wetzel County.

On the other hand asserting improper venue, Stern contends the cause of action arose wholly in Wood County in that the agreement was made and delivered in that county and the breach of the contract, if any, occurred in Wood County upon its refusal to repurchase the bonds at their original cost plus interest. Stern further denies the materiality of the place of performance in support of venue and says that the application of the "to pay" doctrine is inappropriate to the facts.

Both parties agree that *Code,* 56-1-2 (a), (1931), one of the sections of the West Virginia venue statute, controls the disposition of this case. Its pertinent provisions follow:

> "An action, . . . may be brought in any county wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein, . . . :
>
> "(a) When the defendant, . . . , is a corporation; . . . ."

At common law venue was properly laid where the cause of action arose or in any county where the defendant was found. *Vinal v. Core & Compton,* 18 W.Va. 1, 21 (1881). The venue statutes which now determine the geography of litigation have modified the common law in at least two important respects pertinent to this case.

*Code,* 56-1-2 expands venue by supporting it when and where any part of the cause of action arises or occurs. *Carson v. Phoenix Ins. Co.,* 41 W.Va. 136, 23 S.E. 552 (1895). *Code,* 56-1-1 as respects transitory actions, limits venue somewhat in that one of the defendants must reside in the forum county or the cause of action must arise there in order for the action to be properly brought. *Vinal* case, *supra,* p. 21.

But an exception to the requirement of defendant's residence is to be found in *Code,* 56-1-2 (a) wherein it is provided that none of the defendants need reside in the forum county if one of them is a corporation and the cause of action, or a part thereof, arose in the forum county.

Of course, where either a natural person or a corporation is a defendant, jurisdiction of the person must be acquired. Where a foreign corporate defendant is conducting business in West Virginia, *Code,* 31-1-71, as amended, and Rule 4 (d) (7), W. Va. R.C.P. permit substituted personal service by operation of law through delivery of process to the auditor, *Hanks v. Beckley Newspapers Corp.,* 149 W.Va. 552, 142 S.E.2d 727 (1965); *Carson v. Phoenix Ins. Co.,* 41 W.Va. 136, 23 S.E. 552 (1895), as was done in the instant case, or by the use of one of the other prescribed methods of service under the Rules of Civil Procedure. Rule 4, W. Va. R.C.P.; see, LUGAR & SILVERSTEIN, W. VA. RULES p. 47-49 (1960). In the case now before this Court jurisdiction of the person and subject matter is assumed; venue is the problem.

Where properly questioned by motion to dismiss under Rule 12 (b) (3), W. Va. R.C.P., venue must be legally

demonstrated independent of *in personam* jurisdiction of the defendant.

Actions for a breach of contract are transitory and consequently not local in nature. See: 1 AM. JUR. 2d *Actions* § 11 (1962). *Code,* 56-1-2 in no way inhibits the transitory nature of a contract action. This section of the venue statute and the cases construing it recognize that a cause of action may, and in most cases does, consist of more than one element and that these elements may occur severally and in different geographical locations. See, *Jones v. Main Island Creek Coal Co.,* 84 W.Va. 245, 99 S.E. 462 (1919); *Carson v. Phoenix Ins. Co., supra; Harvey v. Parkersburg Insurance Co.,* 37 W.Va. 272, 16 S.E. 580 (1892).

According to the *Jones* case, *supra,* syllabus point 1, "A cause of action within the meaning of § 2 of ch. 123 of the Code (56-1-2) consists of a duty upon the part of one toward another, and the violation or breach of that duty." Accord, *Staples v. Left Fork Fuel Company,* 138 W.Va. 819, 825, 77 S.E.2d 872 (1953). The venue of a cause of action in the case involving breach of contract in West Virginia arises within the county: (1) in which the contract was made, that is, where the duty came into existence; or (2) in which the breach or violation of the duty occurs; or (3) in which the manifestation of the breach—substantial damage occurs. See, *Jones v. Main Island Creek Coal Co., supra* (where the contract was made); *Danser v. Dorr,* 72 W.Va. 430, 78 S.E. 367 (1913) (where the contract was breached); *Guyan Motors, Inc. v. Williams,* 133 W.Va. 630, 57 S.E.2d 529 (1950), *Hanks v. Beckley Newspapers Corp., supra* (where the damage occurred). In other words, the person who brings a civil action for a breach of contract has the choice of bringing it in the county where the contract is made or the county where the contract is breached, or the county where the damage occurs.

Where one supports the venue for his civil action based upon the *place of the breach* comprising a part of the

cause of action, in the usual case, he must bring the action in the place or county in the State where the breach, repudiation or violation of the duty occurs. There is, however, a well recognized exception to this rule. Where the duty imposed is to pay a *debt,* the courts construe the contract and the law implies a further duty upon the debtor after default, to seek the creditor and make payment to him and declares that the residence of the creditor at the time the debt is due is the place of the breach of the contract. *Jones v. Main Island Creek Coal Co., supra,* at 249; *Danser v. Dorr, supra.* Accord, *Davidson v. Browning,* 73 W.Va. 276, 277, 80 S.E. 363 (1913). This is the common law and general rule in the majority of American jurisdictions. See, 60 AM. JUR. 2d *Payment* § 12 (1972). This is the "to pay" doctrine employed by this Court on numerous occasions to construct an implied duty or contract on the part of a debtor to seek out his creditor and pay him. "As a general rule, the cause of action for a breach of contract to pay money arises in the county in which the creditor resides at the time of the breach." *Conservative Life Ins. Co. v. Alexander,* 114 W.Va. 451, 172 S.E. 520 (1933), Syllab. Pt. 1. The "to pay" construction, admittedly an artifice of contract law, has been used or recognized as a mechanism to support venue in the following cases: *Harvey v. Parkersburg Ins. Co., supra; Carson v. Phoenix Ins. Co., supra; Brabham v. Phoenix Ins. Co.,* 41 W.Va. 139, 23 S.E. 553 (1895); *Galloway v. Standard Fire Ins. Co.,* 45 W.Va. 237, 31 S.E. 969 (1898); *Danser v. Dorr, supra; Jones v. Main Island Creek Coal Co., supra; Conservative Life Ins. Co. v. Alexander, supra; Iacuone v. Pietranton,* 138 W.Va. 776, 77 S.E.2d 884 (1953); *Staples v. Left Fork Fuel Co., supra.*

In the case now under consideration it may be assumed, for the purposes of argument, that venue would have been proper in Wood County had the plaintiff chosen to bring the action there. This is the principal place of business of the defendant corporation, and it appears that the contract was made and executed between Wetzel and Stern in that county. It also appears that upon request by Wetzel to

Stern to repurchase the bonds per the agreement that Stern may have breached the contract by its repudiation or refusal to honor the contract and further, notice of repudiation was given by letter deposited in the mail in Parkersburg, thereby locating the venue in Wood County. According to *Restatement, Contracts* § 321 (1932): "Statements of repudiation in a letter mailed or telegram sent to a promisee or other person having a right to a contract which if made orally would be a breach of contract constituted a breach as of the time when and the place where the letter or telegram is dispatched." Accord, deposit of mail in the post office addressed to the party to whom it is to be delivered constitutes delivery at that post office. *Galloway v. Standard Fire Ins. Co.*, 45 W.Va. 237, 31 S.E. 969 (1898).

Wetzel, however, asserts that upon Stern's refusal to honor the repurchase provision, the contract must be construed as establishing a "to pay" relationship between the parties. As the obligation of payment, if any, arises upon the contingency of the open-market sale of the bonds at a loss and as no place of payment is specified in the agreement, it becomes necessary to look at the provisions and construe them. Accordingly, this Court must determine whether, after the repudiation or refusal by Stern of Wetzel's demand that Stern repurchase the bonds, the relationship of the parties is converted to that of debtor and creditor involving a fixed sum or debt at the place where the debt, if established, is payable.

Under the repurchase provisions of the contract, Wetzel is given the right to demand of Stern that Stern repurchase the bonds in question at their original cost plus interest, and should Stern refuse to repurchase, then Wetzel is given the right without notice to Stern, to sell the bonds on the open market and by the express terms of the contract, entitled "to recover from Stern the difference between the original cost and the price obtained from such sale."

An agreement, made in advance of breach, fixing the damages therefor, is enforceable as a contract and fixes the measure of the damages recoverable for the breach, if the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach. See, *Restatement, Contracts* §§ 339, 344, Illus. 6 (1932). Are the damages in the Stern-Wetzel agreement so designated as to be fixed or certain? We believe so. Though not predictable at the time the agreement was made, they are certain to be established in dollar amount upon the happening of the contingency provided. The refusal by Stern to repurchase upon demand and the sale by Wetzel of the bonds subsequent to the breach at the price in the market place, and the resulting loss in comparison to the original purchase price fixes a computable certain sum providing liquidated damages.

Such agreements are enforceable in West Virginia, "where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of actual and fair calculation and adjustment between the parties." *Charleston Lumber Company v. Friedman,* 64 W.Va. 151, 156, 61 S.E. 815, 817 (1908), and see DONLEY, W. VA. ANNOT., *Restatement, Contracts* § 339 (1938).

It would appear that the sum established is fair in that it is based upon the condition of the market place, an independent factor or variable which neither party can control. As to being a reasonable forecast of just compensation for the harm caused by the breach, it is axiomatic that the formula results in restoration to Wetzel of the loss suffered in the open-market sale.

We hold therefore in a contract providing for repurchase of bonds, the tenor of which is to make the obligee whole, that upon the happening of the breach anticipated in the agreement and the employment of the solution provided therein to ascertain the extent of loss, the relationship of the parties is converted to that of debtor and creditor. Under the "to pay" doctrine, it then becomes

the duty of the debtor Stern to seek the creditor Wetzel at its place of residence to make payment of the debt, and the law implies the breach of the contract—the duty to pay coupled with the refusal to pay—to have arisen at the residence of the creditor, Wetzel. A part of the cause of action having occurred in Wetzel County, we sustain the venue as proper.

Even assuming, *arguendo* the contractual duty had not been construed under the "to pay" doctrine and as supporting venue on that principle in Wetzel County, we find another basis for holding that a part of the cause of action arose in Wetzel County. As indicated earlier in this opinion, in *Guyan Motors, Inc. v. Williams,* 133 W.Va. 630, 57 S.E.2d 529 (1950) this Court has enlarged the meaning of "cause of action" to include the consequences of the breach, that is, the damages when they are substantial, as being a several part of the cause of action for purposes of testing venue. It is obvious the damages, $19,237.50, representing the loss in the original value of the bonds as determined by the purchase price and the subsequent sale of them on the open market at a lower figure, is a loss, substantial in amount, which accrues to Wetzel at its principal and only place of business in New Martinsville, Wetzel County. For the foregoing reasons, we answer the certified question in the affirmative.

The holding of this case, which by necessity involves construing the provisions of the contract, is not intended to control the disposition of the merits of the litigation. This Court's interpretation of the contract sued upon was for the limited purpose of considering whether venue was properly laid in the forum court and should be so viewed by the parties litigant.

CARRIGAN and KESSEL, JJ., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

SPROUSE and NEELY, JJ., did not participate in the consideration or decision of this case.

The ruling of the Circuit Court of Wetzel County is affirmed.

*Ruling on certified question affirmed.*