IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-0658

_____

FILED
March 10, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. MICHAEL B. FERRELL, AMERICAN
STAFFING, INC., SHANNON L. WELLS, AND THE CHESTNUT GROUP, INC.,
Petitioners

v.

THE HONORABLE WARREN R. MCGRAW, JUDGE OF THE CIRCUIT COURT OF
WYOMING COUNTY; AND EMPLOYERS' INNOVATIVE NETWORK, LLC, AND
JEFF MULLINS,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION
WRIT GRANTED

_____

Submitted: January 29, 2020
Filed: March 10, 2020

E. Taylor George, Esq.
Arden J. Cogar, Jr., Esq.
MacCorkle Lavender, PLLC
Charleston, West Virginia
Counsel for Petitioner Shannon Wells

Stuart A. McMillan, Esq.
Gabriele Wohl, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Petitioners Michael B. Ferrell,
American Staffing, Inc., and The Chestnut
Group, Inc.

Nicholas S. Preservati, Esq.
SPILMAN THOMAS & BATTLE, PLLC
Charleston, West Virginia
Counsel for Respondents Employers' Innovative
Network, LLC and Jeff Mullins

JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where a trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.      "The venue of a cause of action in a case involving breach of contract in West Virginia arises within the county: (1) in which the contract was made, that is, where the duty came into existence; or (2) in which the breach or violation of the duty occurs; or (3) in which the manifestation of the breach—substantial damage occurs." Syllabus Point 3, *Wetzel County Sav. & Loan Co. v. Stern Bros.*, 156 W. Va. 693, 195 S.E.2d 732 (1973).

4.      Where a challenge is made to venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure, the burden is on the plaintiff to establish proper venue for the civil action in the county in which it is pending under the framework of West Virginia Code § 56-1-1.

WALKER, Justice:

Petitioners seek a writ of prohibition to halt the litigation of Respondents' breach of contract and related tort claims against them in the Circuit Court of Wyoming County for lack of venue. Because the entirety of the business relationship between the parties giving rise to the underlying causes of action took place in Kanawha County and Respondents have failed to meet their burden to prove any connection between the causes of action asserted and Wyoming County sufficient to establish venue there, we grant the writ of prohibition.

## I.     FACTS AND PROCEDURAL HISTORY

American Staffing, Inc. (American Staffing) and Employers' Innovative Network (EIN) are Professional Employment Organizations (PEOs).[1] In March 2018, Petitioners American Staffing and its President Michael B. Ferrell entered into a Purchase Agreement with Respondents EIN and its President Jeff Mullins for EIN to acquire American Staffing's customer list, customer relationships, and goodwill. Respondents

---

[1] PEOs are authorized and governed by West Virginia Code §§ 33-46A-1 to -10. Small-to-medium-sized businesses often outsource human resource functions to PEOs to lessen the costs of maintaining a human resource function. A person employed by a business who has contracted with a PEO becomes a co-employee of the PEO, allowing the PEO to become the "employer of record" for issuance of W-2s and other taxes purposes. The PEO further manages employee benefits, payroll, and any other services the client-employer has contracted with the PEO to provide. Allocation of client-employer and PEO responsibilities and the associated administrative fees paid by the client-employer for services are dictated by the individual agreement.

allege that at least eight of the customer relationships purchased were companies owned in part by Petitioner Shannon L. Wells, and that as a material inducement to enter into the Purchase Agreement, Mr. Ferrell guaranteed EIN and Jeff Mullins that those companies would remain with EIN for at least two years. Respondents further allege that Mr. Ferrell pressured EIN and Mr. Mullins to advance the remaining balance of the purchase price, and EIN paid the advance on November 30, 2018.

On December 3, 2018, Mr. Wells terminated the relationship between his companies and EIN, and Respondents allege that numerous entities listed in the Purchase Agreement as clients of American Staffing were, in actuality, clients of Petitioner The Chestnut Group, another PEO. Respondents contend that The Chestnut Group and Mr. Wells began soliciting EIN's newly-purchased clients by falsely advising them that EIN was engaged in improper business practices, including the failure to pay the taxes it withheld from its clients' employees. Finally, Respondents allege that when Mr. Mullins attempted to resolve this matter with Mr. Ferrell, Mr. Ferrell threatened him and told third-parties that he had "hired someone from Chicago to kill" Mr. Mullins.

As a result of this business transaction, Respondents EIN and Mr. Mullins filed a complaint in the Circuit Court of Wyoming County alleging six causes of action against Petitioners American Staffing, Mr. Ferrell, The Chestnut Group, and Mr. Wells: fraud in the inducement; breach of contract; slander; fraud in the performance; outrage; and civil conspiracy. In their complaint, Respondents state that venue is proper in

2

Wyoming County because the parties conducted business in Wyoming County. Petitioners moved to dismiss for lack of venue, contending that (1) West Virginia Code § 56-1-1 does not support Wyoming County as an appropriate venue for this action when all Defendants, save one,[2] reside or have a principal place of business in Kanawha County; (2) the parties executing the Purchase Agreement reside or have a principal place of business in Kanawha County; (3) the Purchase Agreement was executed in Kanawha County; and (4) the operative business relationship between the entities took place entirely within Kanawha County. The circuit court denied the motion to dismiss for lack of venue because 82 employees to whom EIN would have provided PEO services were residents of Wyoming County. Petitioners then filed this petition for a writ of prohibition.

## II.    STANDARD OF REVIEW

Petitioners invoke this Court's original jurisdiction in prohibition. We have noted that this extraordinary remedy is to be deployed only in particular and extraordinary circumstances.[3] In other words, "a writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where a trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."[4] Our

---

[2] Mr. Wells is a resident of the Commonwealth of Kentucky.

[3] *See, e.g.*, *State ex. rel. Denise L.B. v. Burnside*, 209 W. Va. 313, 317, 547 S.E.2d 251, 255 (2001) (quoting *State ex rel. Allen v. Bedell*, 193 W. Va. 32, 37, 454 S.E.2d 77, 82 (1994) (Cleckley, J., concurring)).

[4] Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

3

review as to whether the circuit court has exceeded its legitimate powers is guided by the

now-familiar and time-tested *Hoover* framework, providing five factors for this Court's

consideration in issuing of a writ of prohibition to correct the alleged overstep:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[5]

Further, we have previously explained that issues of venue are appropriately addressed in

prohibition.[6]

---

[5] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

[6] *See State ex rel. Thornhill Group, Inc. v. King*, 233 W. Va. 564, 567, 759 S.E.2d 795, 798 (2014) ("That the issue of venue may be properly addressed through a writ of prohibition is well-settled.").

4

With this direction, we consider the parties' arguments and the circuit court's rationale for denying Petitioner's motion to dismiss for lack of venue.

## III.    DISCUSSION

West Virginia Code § 56-1-1 dictates the appropriate venue for a civil action and provides, in relevant part:

> (a)  Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:
>
> > (1)  Wherein any of the defendants may reside or the cause of action arose . . . ;
> >
> > (2)  If a corporation or other corporate entity is a defendant, wherein its principal office is or wherein its mayor, president or other chief officer resides; or if its principal office be not in this state, and its mayor, president or other chief officer do not reside therein, wherein it does business; or if it is a corporation or other corporate entity organized under the laws of this state which has its principal office located outside of this state and which has no office or place of business within the state, the circuit court of the county in which the plaintiff resides or the circuit court of the county in which the seat of state government is located . . . .

Respondents raise two points to support venue in Wyoming County under this statute. First, Respondents alleged in their complaint that the parties "conducted business" in Wyoming County. Second, Respondents contend their contract-based causes of action arose in Wyoming County and that the slander cause of action arose in Wyoming County.

5

We dispose at the outset of Respondents' contention that venue was appropriate in Wyoming County because the parties conducted business there. Subsection (a)(2) of this provision clearly provides that the "conducting business" clause is only invoked against corporate entities without a principal office in West Virginia and a chief officer who does not reside in West Virginia. The parties agree that the individually-named defendants reside in Kanawha County, with the exception of Mr. Wells who resides in Kentucky, and that the corporate entities are organized under the laws of West Virginia and have principal offices in Kanawha County.

Respondents apparently came to the conclusion that such an assertion was insufficient to establish venue in Wyoming County because they asserted a different basis for venue below in their response to Petitioners' motion to dismiss. That response invoked subsection (a)(1), arguing that the cause of action as to the contract-based claims and the slander claim arose in Wyoming County.[7] Notably, in response to Petitioners' motion to dismiss, Respondents did not attempt to assert a basis for venue in Wyoming County for their civil conspiracy and outrage claims. We examine each of these causes of action in turn.

---

[7] We note that subsection (a)(1) also provides for venue in any county in which any defendant resides. Neither of the individual defendants below reside in Wyoming County. And, Respondents do not assert that the residence of either Mr. Wells or Mr. Ferrell is their basis for venue in Wyoming County.

## A. Contract-based Claims

Three counts in Respondents' complaint – fraud in the inducement, breach of contract, and fraud in the performance – relate to contract negotiations, terms of the contract itself, and, of course, the performance of that contract. We have held that

> [t]he venue of a cause of action in a case involving breach of contract in West Virginia arises within the county: (1) in which the contract was made, that is, where the duty came into existence; or (2) in which the breach or violation of the duty occurs; or (3) in which the manifestation of the breach— substantial damage occurs.[8]

The parties agree that this is the appropriate standard by which to judge venue as to the contractual-based causes of action. The parties further agree that the Purchase Agreement was made in Kanawha County and breached in Kanawha County. The crux of Respondents' case for venue in Wyoming County is that the manifestation of the breach-substantial damage occurred in Wyoming County. At Respondents urging, the circuit court reached the conclusion that venue was proper under the third prong of *Wetzel* by finding that as a result of American Staffing's alleged breach, EIN lost 82 employees who were residents of Wyoming County and also lost the administrative fees generated by those employees in Wyoming County. In other words, EIN collects a fee equal to 2-2.5% of the gross pay of each employee the client-employer has contracted with EIN to manage. Since

---

[8] Syl. Pt. 3, *Wetzel County Sav. & Loan Co. v. Stern Bros.*, 156 W. Va. 693, 195 S.E.2d 732 (1973).

82 employees collected their paychecks in Wyoming County, the circuit court reasoned that Respondents' damages were felt in Wyoming County.

Petitioners rely on *State ex rel. Galloway Group v. McGraw*,[9] in contending that this connection is far too tenuous to establish venue in Wyoming County. In *Galloway*, a law office (Fredeking & Fredeking) and law partnership (Galloway Group) entered into a fee-sharing agreement.[10] When Galloway Group allegedly failed to pay monies due to Fredeking & Fredeking under the fee-sharing agreement, the latter filed suit in Wyoming County, contending that the parties generated fees from litigation involving the UMWA Health & Retirement Plan, and many UMWA members reside in Wyoming County.[11] Galloway Group challenged the propriety of venue in Wyoming County.[12] The circuit court found that venue was proper, in part, because those UMWA members residing in Wyoming County generated the fees and debts that were the subject of the underlying dispute – in other words, those fees were the manifestation of the breach.[13] We rejected that argument, somewhat summarily concluding that the circuit court's reasoning was

---

[9] 227 W. Va. 435, 711 S.E.2d 257 (2011).

[10] *Id.* at 436, 711 S.E.2d at 258.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 437, 711 S.E.2d at 259.

"invalid" and that "our law does not support the conclusion that this fact would establish venue in Wyoming County[.]"[14]

Petitioners' takeaway from *Galloway* is a rule that venue may not be established by "where some non-party to the action might be found." Conversely, Respondents make a nuanced argument that *Galloway* is distinguishable because in this case the employees in Wyoming County and the fees generated from them were the benefit of entering into the contract – they purchased the *source* of the fees from American Staffing. That relationship is, to Respondents, materially different than simply stating that the source of lost fees happen to reside in Wyoming County.

While we do not read *Galloway* as stating any bright-line rule with respect to non-parties, we also find that these Wyoming County residents are as tangential to this underlying contractual dispute as the ones we addressed and found insufficient to establish venue in *Galloway*. Respondents represented to the circuit court that "[t]here were 850 employees that came over from our purchase contract. Three hundred and fifty of those employees were in West Virginia, of those 350 employees in West Virginia 82 were from Wyoming County; only 13 were in Kanawha County." As conceded by counsel at oral argument, EIN operates much the same as any other PEO – the customers it purchased

---

[14] *Id.* at 437-38, 711 S.E.2d at 259-60. This Court also took issue with a factual discrepancy that appeared to indicate that Galloway Group was not even party to an agreement with a provision regarding UMWA litigation. *Id.* at 437, 711 S.E.2d at 259.

9

from American Staffing are *client-employers*, not employees. While the employees of those client-employers, by agreement, become co-employees of EIN for tax purposes, EIN had no agreement whatsoever with *any* employees in *any* county – it did not purchase their willingness to stay on with the prospective client-employer; and it did not purchase an absolute number of employees to maintain for those client-employers.

These Wyoming County employees have no relation to the underlying contract except insofar as their gross pay is used to calculate the fee owed by the client-employer to the applicable PEO,[15] and the contract at issue changed that PEO. The employees themselves are only affected by which PEO completes the human resources services for their client-employer insomuch as it changes the name on their paycheck and with whom they interact for human resource needs. Their job function does not change; their employment status is not jeopardized or in any way altered by their employer's decision to contract with a PEO.[16] Likewise, the fact that the fee collected from those client-employers is calculated based on the gross pay of the employees the client-employers ask EIN to manage has no effect on whether those client-employers continued to do business with EIN. To simplify the point, EIN contracted with American Staffing to

---

[15] While we note that Respondents take great care to characterize the administrative fee as being "generated" by the employees, by definition an "administrative fee" is the amount *charged to a client-employer*. *See* W. Va. Code § 33-46A-2(a).

[16] Rather, West Virginia Code § 33-46A-6(b)(2) specifically provides, in part, that "[e]ach professional employment agreement shall provide that the client-employer shall retain the right to hire, discipline, and terminate a covered employee."

purchase their customers. Their customers are client-employers – not the employees of client-employers.

Respondents do not allege that any client-employers they lost as a result of the alleged breach of contract had a principal place of business in Wyoming County. Respondents make reference, by way of example to the circuit court, of a company called High-Voltage, which had a coal *site* in Wyoming County. According to the circuit court's order, eighteen employees of High-Voltage residing in Wyoming County became co-employees of EIN under the Purchase Agreement. Respondents did not allege that High-Voltage or any Wyoming County client-employer was one of Mr. Wells's companies that Mr. Ferrell or American Staffing had guaranteed would stay on with EIN for two years following the Purchase Agreement. They did not allege that High-Voltage or any Wyoming County client-employer was one such client-employer listed in the Purchase Agreement that was, in actuality, a client of The Chestnut Group rather than American Staffing. Finally, Respondents did not allege that High-Voltage or any Wyoming County client-employer had any obligation whatsoever under the Purchase Agreement such that its defection from EIN could be said to stem from the breach of contract.

The record reveals that the Defendants reside in[17] or have principal places of business in Kanawha County. Both PEOs are based in Kanawha County. They conducted

---

[17] *But see supra* n. 2.

11

contract negotiations in Kanawha County and executed the Purchase Agreement in Kanawha County. The business relationship of the parties exists wholly within Kanawha County. The Purchase Agreement was allegedly breached in Kanawha County. The damages flowing from that alleged breach are made evident through the loss of EIN's client-employers. The loss of the fees calculated based on employees of those client-employers are so peripheral and incidental a damage that the residency of those employees is too far removed from the contractual relationship at issue here to establish venue. It is plain on these facts that venue for the contract-based claims properly lies in Kanawha County, not Wyoming County.

### B. Civil Conspiracy and Outrage

With respect to Respondents' remaining claims, we impress upon Respondents that West Virginia Code § 56-1-1 sets parameters on a plaintiff's choice of forum and dictates where a civil action may be properly brought.[18] To the extent it is necessary to explicitly so state, we hold that where a challenge is made to venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure, the burden is on the plaintiff to establish proper venue for the civil action in the county in which it is pending under the framework of West Virginia Code § 56-1-1.[19] Respondents cannot establish venue in

---

[18] *See generally* W. Va. Code § 56-1-1(a).

[19] *See* syl. pt. 1, *Wetzel County Sav. & Loan Co.*, 156 W. Va. 693, 195 S.E.2d 732 ("Where properly questioned by a motion to dismiss under Rule 12(b)(3), W. Va. R. C. P., *venue must be legally demonstrated* independent of In personam jurisdiction of the defendant.") (emphasis added). *See also C.H. James & Co., Inc. v. Federal Food*

Wyoming County for their civil conspiracy and outrage claims simply by saying that Petitioners have not shown why it should not be.

Respondents contend that the civil conspiracy and outrage claims have no connection to Wyoming County, and the circuit court did not rely on either the civil conspiracy or outrage claims to support its finding that venue was appropriate in Wyoming County. The parties alleged to have conspired do not reside or have a principal place of business in Wyoming County and the tort was not alleged to have occurred in Wyoming County. The parties alleged to have committed or been the subject of the tort of outrage do not reside or have a principal place of business in Wyoming County and the tort of outrage was not alleged to have occurred in Wyoming County. Neither the complaint nor arguments made in response to Petitioners' motion to dismiss set forth any allegations whatsoever that would establish venue in Wyoming County with respect to their outrage or civil conspiracy claims.

### C. Slander

The allegations as to the slander claim are equally infirm in light of a plaintiff's burden. Respondents allege in their complaint that "[a]fter EIN and [American Staffing] entered into the Purchase Agreement, [The Chestnut Group] and Wells began soliciting EIN's *clients* by falsely advising them that EIN was engaging in improper

---

*Marketers Co.*, 927 F. Supp. 187, 189 (S.D. W. Va. 1996) ("When challenged, plaintiff has the burden of establishing proper venue.").

business practices, including not paying the taxes it had withheld from its clients' employees."[20]  Respondents then generally alleged that "Wells and [The Chestnut Group] have made defamatory comments against EIN and Mullins to *third-parties*.  Wells and [The Chestnut Group's] defamatory comments specifically referenced EIN and Mullins, were made negligently by Wells and [The Chestnut Group], and caused resulting injury to EIN and Mullins."[21]

> Respondents argued that
>
> [o]nly once the discovery process is complete will Plaintiff be able to confirm whether defendants made defamatory statements against the Plaintiff's [sic] in Wyoming County. However, at this point, the Plaintiffs have alleged that the Defendants made defamatory statement to EIN's clients, some of which have actual work locations in Wyoming County.

The circuit court agreed, and viewing these facts in the light most favorable to Respondents (plaintiffs below), assumed that defamatory statements were made to employees of Respondents' client-employers in Wyoming County and found that sufficient to establish venue there.

Petitioners asserted in their motion to dismiss that venue could not properly lie in Wyoming County because there was no evidence whatsoever that any slanderous

---

[20] Emphasis added.

[21] Emphasis added.

14

statement was made there or reached any third-party there.[22]  Respondents effectively rest on their pleadings that Petitioners had made defamatory statements to EIN clients, generally.[23]  The circuit court took those pleadings one step further at the behest of Respondents, reading into the complaint that some of the client-employers had employees at work locations in Wyoming County and those employees *might* have heard a slanderous statement.[24]

Initially, we note that the complaint alleges that Mr. Wells and The Chestnut Group had been soliciting EIN's "clients" and that slanderous statements had been made to "third-parties."  To belabor the point made above, EIN's clients are client-employers, not the employees.  Respondents have not alleged that EIN lost any client with a principal place of business in Wyoming County as a result of slander or otherwise.  Rather, the only relevance of Wyoming County to these proceedings whatsoever is the allegation that at

---

[22] This Court has not specified where a slander cause of action arises for purposes of determining venue, nor do we need to reach that issue in light of Respondents' failure to plead any connection whatsoever with Wyoming County in relation to its slander claim.

[23] Respondents did file an affidavit relating to the number of client-employers' employees located in Wyoming County mimicking the assertions made in their response to the motion to dismiss.  This affidavit contained no information that could be plausibly tied to an allegation of slander occurring in Wyoming County.

[24] *But see Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248 (10th Cir. 2012); *Murphy v. Schneider Nat'l Inc.*, 362 F.2d 1133 (9th Cir. 2004); *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) ("Plaintiff contends that in responding to a motion to dismiss for improper venue, he was entitled to rely upon the well pled facts of his complaint.  This is true, however, only to the extent that such facts are uncontroverted by defendant's affidavit.").

least one client-employer has a work site in Wyoming County. Yet, there is no allegation that any slanderous statement was made to employees in Wyoming County or that Mr. Wells or The Chestnut Group had any communication at all with anyone in Wyoming County. Much more than taking the allegations as true, the circuit court did Respondents the favor of rewriting their complaint.

As to the circuit court's finding that only discovery would reveal whether a slanderous statement had been made in Wyoming County, we believe that under some circumstances, limited discovery may be available to address the propriety of venue based on controverted facts.[25] But, noticeably absent here are controverted facts. There are no controversies surrounding the allegations the resolution of which could be accomplished by or would even support discovery; we utterly lack even a single allegation tying a slanderous statement to Wyoming County or tying any party alleged to have made a slanderous statement to Wyoming County.[26] We have a bald assertion that because EIN has client-employers who have work locations in Wyoming County, some unspecified

---

[25] *See, e.g.*, *Bowers v. Wurzburg*, 202 W. Va. 43, 48, 501 S.E.2d 479, 484 (1998); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978).

[26] *Compare with United Bank, Inc. v. Blosser*, 218 W. Va. 378, 384, 624 S.E.2d 815, 821 (2005) (affirming denial of motion to dismiss for improper venue because "there is evidence in the record, which was before the circuit court prior to its rendering of a decision as to venue, establishing that the assets . . . are located in Wood County."). *See also*, *Bowers*, 202 W. Va. at 48, 501 S.E.2d at 484 (citing *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d. Cir. 1990) ("generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; *but until she has shown a reasonable basis for assuming jurisdiction*, she is not entitled to any other discovery.")) (emphasis added).

16

discovery, once conducted, might lead to a conclusion that some unknown statement was made to some unknown third-party who might have had some connection with Wyoming County. While we do not foreclose the use of discovery to resolve factual disputes that may arise in the context of a motion to dismiss for improper venue, we cannot conclude that it would have been appropriate here where there exists only a hypothetical and wholly unalleged scenario, rather than an allegation by Respondent to be investigated. Venue cannot lie by virtue of a request for a fishing expedition, and Respondents have altogether failed to meet their burden to satisfy the requirements of West Virginia Code § 56-1-1 with respect to their slander claim.

Respondents contend that the *Hoover* factors recommend against issuance of a writ of prohibition and hint that this posture is procedurally flawed in that Petitioners have an adequate means to obtain the requested relief under West Virginia Code § 56-1-1(b) and failed to avail themselves of it. We disagree. That statute provides:

> Whenever a civil action or proceeding is brought in the county where the cause of action arose under the provisions of subsection (a) of this section, if no defendant resides in the county, a defendant to the action or proceeding may move the court before the action is pending for a change of venue to a county where one or more of the defendants resides and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by the change of venue, the court may grant the motion.

Two portions of this statute render it either inapplicable or inadequate to the present circumstances. First, it presupposes that venue has been *properly* brought in the county

17

where the cause of action arose. This statute merely provides a mechanism to request to move the venue of an action, once properly established, to a more convenient location for the parties at the discretion of the court. Conversely, we have held that a motion to dismiss under Rule 12(b) is the method to *challenge* improper venue.[27] Second, the statute contains the permissive language "the court may grant the motion." The discretion that accompanies this remedy is inadequate insofar as Petitioners are *entitled* to proper venue as determined under West Virginia Code § 56-1-1.

Similarly, we have explained that issues of venue are appropriately addressed in prohibition given the "inadequacy of the relief permitted by appeal."[28] We have further justified this extraordinary remedy in the context of venue determinations on prejudice grounds: "[w]e reached [the conclusion that prohibition was appropriate to resolve the issue of where venue for a civil action lies] after noting that the issue of venue had the potential of placing a litigant at an unwarranted disadvantage in a pending action and that relief by appeal would be inadequate."[29] For those reasons, we find that the first and second *Hoover*

---

[27] *See* syl. pt. 9, *Lester v. Rose*, 147 W. Va. 575, 130 S.E.2d 80 (1963), *overruled on other grounds by State ex rel. Sutton v. Spillers*, 181 W. Va. 376, 382 S.E.2d 570 (1989).

[28] *State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 124, 464 S.E. 2d 763, 766 (1995). *See also Thornhill Group*, supra n.6.

[29] *State ex rel. Huffman v. Stephens*, 206 W. Va. 501, 503, 526 S.E.2d 23, 25 (1999).

18

factors weigh in favor of granting Petitioners' requested writ of prohibition to halt litigation of their claims in Wyoming County.

## IV.    CONCLUSION

For the foregoing reasons, Respondents have not demonstrated in accordance with West Virginia Code § 56-1-1 that venue for their civil action properly lies in Wyoming County. We therefore grant Petitioners' requested writ of prohibition and direct the circuit court to dismiss the case from its docket without prejudice.

Writ granted.