IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0906

_____

FILED
May 10, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. WEST VIRGINIA UNIVERSITY
HOSPITALS, INC., d/b/a CHESTNUT RIDGE CENTER and WEST VIRGINIA
UNIVERSITY BOARD OF GOVERNORS,
Petitioners

v.

THE HONORABLE LYNN A. NELSON, JUDGE OF THE CIRCUIT COURT OF
TUCKER COUNTY; and MARK HECKLER, Individually and as Personal
Representative and Administrator of the Estate of MARION HECKLER, deceased,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION
WRIT GRANTED

_____

Submitted: March 17, 2021
Filed: May 10, 2021

Christine S. Vaglienti, Esq.
Lauren Twigg Krupica, Esq.
West Virginia University Health System
Legal Services
Morgantown, West Virginia
Counsel for West Virginia University Hospitals,
Inc., d/b/a Chestnut Ridge Center

Chelsea V. Brown, Esq.
Bowles Rice LLP
Morgantown, West Virginia
Counsel for West Virginia University
Board of Governors

Robert S. Pruett, Esq.
Benjamin B. Ware, Esq.
W. Jeffrey Vollmer, Esq.
Shanna L. Brown, Esq.
GOODWIN & GOODWIN, LLP
Charleston, West Virginia
Counsel for Respondent Mark Heckler

JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2. "Where a challenge is made to venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure, the burden is on the plaintiff to establish proper venue for the civil action in the county in which it is pending under the framework of West Virginia Code § 56-1-1." Syllabus Point 4, *State ex rel. Ferrell v. McGraw*, 243 W. Va. 76, 842 S.E.2d 445 (2020).

3. For purposes of determining venue, the cause of action for a third-party medical negligence claim pursued under West Virginia Code § 55-7B-9b (2003) arises in the county where the provider rendered or failed to render healthcare services with allegedly willful and wanton or reckless disregard of a foreseeable risk of harm to third persons.

WALKER, Justice:

After Emily Heckler received psychiatric treatment at Chestnut Ridge Center in Morgantown, she was discharged and returned home to Tucker County with her father, Mark Heckler. Two days later, she stabbed her stepmother Marion to death. Mr. Heckler, as administrator of Marion's estate, then brought a third-party medical negligence claim in Tucker County under West Virginia Code § 55-7B-9b (2003) of the Medical Professional Liability Act (MPLA)[1] against Petitioners West Virginia University Hospitals, Inc., d/b/a Chestnut Ridge Center and West Virginia University Board of Governors.[2] After the circuit court in Tucker County denied Petitioners' motion to dismiss for improper venue, or in the alternative to transfer venue to Monongalia County, they petitioned this Court for a writ of prohibition. We grant the writ and conclude that under West Virginia Code § 55-7B-9b, where venue is established based on where the cause of action arose, venue is only proper in the county in which the healthcare was rendered with allegedly willful and wanton or reckless disregard of a foreseeable risk of harm to third persons.

---

[1] W. Va. Code § 55-7B-1 to -12.

[2] Faculty and resident physicians at Chestnut Ridge are employed by Petitioner West Virginia University Board of Governors, while non-physician healthcare providers are employed by Petitioner West Virginia University Hospitals.

# I.       Facts and Procedural History

Emily Heckler, Mr. Heckler's nineteen-year-old daughter, was transferred to Chestnut Ridge in Morgantown for psychiatric treatment after she self-inflicted a head injury. Emily underwent inpatient treatment at Chestnut Ridge for two weeks.[3] On April 11, 2018, Emily was discharged to her father's care in Morgantown, where he took her to a follow-up neurology appointment before returning to his home in Tucker County. Two days later, Emily brutally stabbed and killed her stepmother, Marion, in the driveway of their home in Tucker County.

Mr. Heckler, as personal representative of Marion's estate, filed a medical negligence claim against Petitioners in Tucker County after complying with the pre-suit notice requirements of West Virginia Code § 55-7B-6. Mr. Heckler alleges that Petitioners breached the standard of care for their respective professions by prematurely discharging Emily from their care, and that Petitioners were aware of specific homicidal ideations Emily had toward her stepmother. In denying those allegations, Petitioners cite to medical records indicating that Mr. Heckler agreed to accept custody and supervision of Emily and that he was comfortable with her discharge. They deny that Emily made any specific threats toward her stepmother.

---

[3] While the parties provide more specific detail of Emily's treatment than is reiterated here, we include only the allegations necessary to our venue analysis in an effort to respect privacy.

Petitioners moved to dismiss the complaint for improper venue, or in the alternative, to transfer venue to Monongalia County, arguing that the cause of action arose in Monongalia County where the medical care was rendered, not Tucker County. Mr. Heckler responded that Marion had been substantially harmed in Tucker County, and, for that reason, the cause of action arose in *both* Monongalia County and Tucker County because different elements of the cause of action were met in different counties. The circuit court denied Petitioners' motion, finding venue proper in Tucker County under the substantial harm theory. Petitioners then filed this petition for a writ of prohibition and ask this Court to determine where venue lies in a third-party medical negligence claim.

## II.    Standard of Review

Our review in matters of prohibition of whether the circuit court has exceeded its legitimate authority is undertaken with guidance from the *Hoover* factors:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining

3

whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[4]

While extraordinary remedies are not issued lightly,[5] we have expressed an inclination to resolve matters of venue by way of original jurisdiction given the concern that venue-based error cannot be adequately corrected on appeal.[6] Similarly, the party made to litigate in an improper forum is at an "unwarranted disadvantage," invoking the prejudice factor under *Hoover*.[7] Having concluded that venue is appropriately addressed in prohibition, we turn to the merits of Petitioners' improper venue claim.

### III. Analysis

West Virginia Code § 56-1-1 (2018) addresses venue generally, and provides in relevant part:

---

[4] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

[5] *See* syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where a trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1.").

[6] *State ex rel. Thornhill Group, Inc. v. King*, 233 W. Va. 564, 567, 759 S.E.2d 795, 798 (2014) (citing *State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 124, 464 S.E.2d 763, 766 (1995)).

[7] *State ex rel. Huffman v. Stephens*, 206 W. Va. 501, 503, 526 S.E.2d 23, 25 (1999).

4

(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered, or some part thereof, is. . . .

We have held that "[w]here a challenge is made to venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure, the burden is on the plaintiff to establish proper venue for the civil action in the county in which it is pending under the framework of West Virginia Code § 56-1-1."[8]

The parties agree that the remaining provisions of § 56-1-1 do not apply to establish venue in Tucker County and that the action was filed there on the premise that the cause of action arose there, not because of any residency or contacts Petitioners may have had with Tucker County. West Virginia Code § 14-2-2a also provides an exclusive venue provision for suits against West Virginia University Board of Governors in the county in which the cause of action arose.[9] So, both applicable venue statutes serve to require the action to be filed in the county where the cause of action arose.

---

[8] Syl. Pt. 4, *State ex rel. Ferrell v. McGraw*, 243 W. Va. 76, 842 S.E.2d 445 (2020).

[9] *See* W. Va. Code § 14-2-2a(a) (2018) ("Notwithstanding the provisions of § 14-2-2 of this code, any civil action in which the governing board of any state institution of higher education, any state institution of higher education, or any department or office of any of those entities, or any officer, employee, agent, intern or resident of any of those entities, acting within the scope of his or her employment, is made a party defendant,

5

Mr. Heckler does not dispute that the cause of action arose in Monongalia County, but he contends that it also arose in Tucker County if one severs the elements of negligence. Stated differently, he argues that although the medical care – the subject of the breach – was rendered in Monongalia County, the damage was felt in Tucker County because that is where Marion was killed. We have acknowledged the severability of elements of a cause of action for purposes of venue in other contexts in *Wetzel County Savings & Loan Co. v. Stern Brothers, Inc.*[10] and *McGuire v. Fitzsimmons.*[11]

*Wetzel County* was a breach of contract action. In that case, we determined that "[a]ctions for a breach of contract are transitory and consequently not local in nature."[12] We thus held that a cause of action "involving a breach of contract in West Virginia arises within the county: (1) in which the contract was made, that is, where the duty came into existence; or (2) in which the breach or violation of the duty occurs; or (3) in which the manifestation of the breach—substantial damage occurs."[13]

---

shall be brought in the circuit court of any county wherein the cause of action arose, unless otherwise agreed by the parties.").

[10] 156 W. Va. 693, 195 S.E.2d 732 (1973).

[11] 197 W. Va. 132, 475 S.E.2d 132 (1996).

[12] *Wetzel Cnty.*, 156 W. Va. at 698, 195 S.E.2d at 736 (citation omitted).

[13] *Id.* at syl. pt. 3, in part.

6

In *McGuire*, this Court extended that reasoning to a legal malpractice action. There, we contemplated whether the cause of action in a legal malpractice suit might arise in more than one county and thereby give rise to venue in different counties.[14] The *McGuire* court applied the reasoning in *Wetzel County* to conclude that the elements of a legal malpractice action are also divisible: "[u]sing *Wetzel County* as our guide, we find that venue arises in a legal malpractice action: (1) where the attorney's employment is contracted, that is, where the duty came into existence; or (2) where the breach or violation of the duty occurs; or (3) where the manifestation of the breach—substantial damage—occurs."[15]

Seizing on those holdings in *Wetzel County* and *McGuire*, the circuit court concluded that "manifestation of the breach—substantial damage" could be applied in the context of third-party medical negligence claims to find venue proper in Tucker County. Mr. Heckler takes up that argument and supplements it, arguing that *McGuire*, in particular, is instructive because legal malpractice is just a short stone's throw from medical malpractice. We disagree for two primary reasons.

First, legal malpractice is akin to breach of contract in a way that medical malpractice is not. Specifically, the venue inquiry as to duty under the legal malpractice framework is grounded in where the contractual obligations to one's client arose. And,

---

[14] *McGuire*, 197 W. Va. at 136, 475 S.E.2d at 136.

[15] *Id.* at 137, 475 S.E.2d at 137.

7

this Court has not created a bright-line rule that torts are divisible for purposes of a venue determination. Despite invitation and the requisite circumstances to extend the divisibility doctrine to all common law torts in *McGuire*, we did not. More than that, the *McGuire* court took special care to note that its holding did not purport to apply to all tort actions.[16] We do not find these circumstances, where the cause of action operates outside of common law, to be an appropriate avenue to expand the divisibility doctrine espoused in *Wetzel County* and *McGuire* to tort actions at large.

Second, and more importantly, medical negligence – though negligence it may be – is no ordinary, common law tort. Medical negligence, first and foremost, is governed by the MPLA. So, to the extent Mr. Heckler seeks to equate the venue analysis for a breach of contract or legal malpractice with that of medical negligence, we disagree that it is bound by those common law confines where the Legislature has specifically limited the third-party medical negligence cause of action. Instead, we look to the cause of action as it arises under the statutory framework of the MPLA.

This Court has had one other occasion to examine venue under the MPLA. In *Jewell v. Peterson*, a cause of action for medical negligence was filed in Kanawha County, where the patient had died.[17] The facts of *Jewell* established that all of the

---

[16] *Id.* at 136 n.5, 475 S.E.2d at 136 n.5.

[17] No. 11-1354, 2012 WL 5834889 (W. Va. Nov. 6, 2012) (memorandum decision).

allegedly negligent medical care in failing to diagnose Ms. Jewell's lung cancer had been rendered in Fayette County, and that she died in Kanawha County three days after her diagnosis.[18]   In affirming the dismissal of the case for improper venue, the *Jewell* court concluded that "under the specific facts as alleged [in the complaint], any cause of action against these Respondents occurred in Fayette County."[19]   But, *Jewell* was issued as a memorandum decision and does not offer lengthy analysis as to how the Court arrived at that conclusion.

Similar to the facts of *Jewell*, there is no allegation in this case that any of Emily's medical care was rendered in Tucker County.  It is undisputed that none of the clinical decision-making that is the subject of this medical negligence action took place in Tucker County.  So, the duty to Marion arose in Monongalia County.[20]  Mr. Heckler alleges that Petitioners breached that duty by prematurely discharging Emily from their custody knowing of her homicidal ideations; the decision to discharge was made in Monongalia County.  Mr. Heckler took custody of his daughter in Monongalia County. But, Mr. Heckler argues that the damage occurred in Tucker County because Marion died there, and without that damage to the third party there is no cause of action.

---

[18] *Id.* at *1.

[19] *Id.*

[20] *See infra*, W. Va. Code § 55-7B-9b.

9

While we agree with Mr. Heckler that *Jewell*, as a first-party medical negligence case, is not dispositive, it is certainly instructive. We glean from *Jewell* that, at least with respect to first-party medical negligence actions, the fact that the death occurred in the county is, on its own, insufficient to establish venue in that county under the framework of the MPLA. Rather, venue is established in the county where the healthcare was rendered. That conclusion in *Jewell* runs contrary to Mr. Heckler's assertion that medical negligence claims may be brought in any county where "substantial harm" has resulted from the alleged breach of the standard of care and undercuts the divisibility of the cause of action argument.

But the question remains as to whether *third-party* medical negligence actions differ fundamentally from first-party medical negligence actions like that explored in *Jewell*, such that venue may be proper in the county where the death occurred for that very narrow line of cases since the medical care was rendered to someone who is not the plaintiff. To answer it, we return to the MPLA, but do not find cause there to stray from the substantial harm analysis implicitly rejected in *Jewell*.

In *Osborne v. U.S.*, in the absence of specific guidance from the MPLA as to the availability of third-party actions, this Court looked to the definition of "medical professional liability" under the MPLA, and concluded that third-party actions were permissible under the MPLA, provided that the third party could establish the appropriate

10

elements of proof under § 55-7B-3 (1986).[21] In response, the following year, the

Legislature enacted West Virginia Code § 55-7B-9b (2003), indirectly permitting, but

significantly limiting, third-party actions. West Virginia Code § 55-7B-9b, provides:

> *An action may not be maintained* against a health care
> provider pursuant to this article by or on behalf of a third-
> party nonpatient for rendering or failing to render health care
> services to a patient whose subsequent act is a proximate
> cause of injury or death to the third party *unless the health
> care provider rendered or failed to render health care
> services in willful and wanton or reckless disregard of a
> foreseeable risk of harm to third persons.* Nothing in this
> section shall be construed to prevent the personal
> representative of a deceased patient from maintaining a
> wrongful death action on behalf of such patient pursuant to
> article seven of this chapter or to prevent a derivative claim
> for loss of consortium arising from injury or death to the
> patient arising from the negligence of a health care provider
> within the meaning of this article.[22]

In examining this statute in the context of this case, we dwell on the

specific constraint the Legislature has placed on third-party medical negligence causes of

action: third-party actions under the MPLA are presumptively non-existent, evidenced by

the "[a]n action may not be maintained . . . unless" language. It is obedience to the

"unless" clause that gives rise to any cause of action at all. An allegation that "the health

care provider rendered or failed to render health care services in willful and wanton or

reckless disregard of a foreseeable risk of harm to third persons" is indispensable to

maintaining a third-party medical negligence claim.

---

[21] 211 W. Va. 667, 675, 567 S.E.2d 677, 685 (2002).

[22] Emphasis added.

For that reason, Mr. Heckler's cause of action necessarily arises from the allegation that Petitioners, in rendering or failing to render healthcare services, did so willfully, wantonly, or in reckless disregard for the risk it posed to Marion. Actions under § 55-7B-9b are thus unsuited to a division-of-elements analysis for purposes of determining venue. Petitioners rendered healthcare or failed to do so only in Monongalia County. Reinforced by the Court's unwillingness in *Jewell* to divide the elements of first-party medical negligence for purposes of examining where the cause of action arose for venue purposes, we conclude that § 55-7B-9b does not provide for venue in any county save for that in which the medical care was rendered.

Mr. Heckler argues that the language of the statute contemplating the "subsequent act" of a patient suggests that venue may also be proper in the county where the ultimate harm to that third party occurred – that is, where the act subsequent to the rendering of healthcare occurred. As Mr. Heckler described his argument, "[f]or Marion's claim, the center of the harm (her stabbing death), as well as the patient's 'subsequent act' that caused it (Emily's conduct) all occurred in Tucker County." Mr. Heckler's argument ignores that the subsequent act language precedes the "unless" clause. Stated another way, even if Mr. Heckler's third-party claim requires him to prove that Emily's subsequent act proximately caused the harm to Marion, and regardless of the harm caused to Marion, his claim is restricted at law by the express language of the MPLA because third-party medical negligence as a cause of action does not exist *at all* absent particularized allegations relating to the healthcare rendered.

12

We also disagree with Mr. Heckler's line of reasoning because Emily's conduct is the "subsequent act" and the proximate cause of Marion's death – a conclusion not in dispute – and, yet, Emily was not added as a defendant. So, while any cause of action against *Emily* arose in Tucker County for the harm she proximately caused there,[23] the conduct for which Mr. Heckler seeks to hold *Petitioners* liable occurred solely in Monongalia County where they made the clinical determination to discharge Emily, be it willfully, wantonly, or in reckless disregard for Marion's safety as discovery may or may not reveal.[24] The substance of Mr. Heckler's third-party medical negligence claim against Petitioners is not Emily's "subsequent act" but Petitioners' rendering of healthcare with a state of mind deemed actionable by the Legislature under the MPLA. That notion is buttressed by Mr. Heckler's complaint, which revolves around the medical decision-making that lead to Emily's discharge in Monongalia County.[25]

---

[23] *See* W. Va. Code § 56-1-1(c) ("When venue is proper as to one defendant, it is also proper as to any other defendant with respect to all actions arising out of the same transaction or occurrence."); *see also State ex rel. Energy Corp. of America v. Marks*, 235 W. Va. 465, 468, 774 S.E.2d 546, 549 (2016) ("West Virginia follows the venue-giving defendant principle: once venue is proper for one defendant in an action, venue is also proper for all other defendants in that same action, but only if the venue-giving defendant was properly joined.").

[24] Notably, as discussed above, there is no allegation that Petitioners rendered or *failed* to render healthcare services to Emily in Tucker County.

[25] Though references are made in Mr. Heckler's complaint that Petitioners discharged Emily "to Tucker County," it is undisputed that Petitioners discharged Emily *in* Monongalia County and had no further interaction with Emily before she killed her stepmother.

As a result, we hold that for purposes of determining venue, the cause of action for a third-party medical negligence claim pursued under West Virginia Code § 55-7B-9b (2003) arises in the county where the provider rendered or failed to render healthcare services with allegedly willful and wanton or reckless disregard of a foreseeable risk of harm to third persons. But, as discussed above, nothing in our holding today precludes application of the venue-giving defendant principle under § 56-1-1 where the patient, having committed some subsequent act proximately causing injury to the plaintiff, is added as a defendant.[26]

So, we find that the circuit court erred in applying the common law venue principles of *Wetzel County* and *McGuire* to this third-party medical negligence action under the MPLA and concluding that venue could lie in Tucker County under the facts of this case. That error, combined with the correctability and prejudice factors of *Hoover*, compel this Court to grant the writ of prohibition and conclude that venue for the underlying action, as pleaded, lies solely in Monongalia County.

## IV.    Conclusion

Since Mr. Heckler's cause of action against Petitioners arose in Monongalia County, we grant Petitioners' requested writ of prohibition and direct the Circuit Court of Tucker County to dismiss Mr. Heckler's action for improper venue, without prejudice, or, in the alternative, to transfer venue to Monongalia County.

---

[26] *See* supra n.23.

14